*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0301p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
              *Plaintiff-Appellee,*

              *v.*

                                                      No. 12-6351

ROBERT THOMAS SHULTZ,
                   *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:09-cr-00137-1—Thomas A. Varlan, District Judge.

Argued: October 9, 2013

Decided and Filed:  October 23, 2013

Before: KEITH and SUTTON, Circuit Judges; BLACK, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant.  Luke A. McLaurin, Matthew T. Morris, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

_____

[*]The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

1

————————————

**OPINION**

————————————

SUTTON, Circuit Judge.  Robert Shultz, who stands convicted of receiving and possessing child pornography, appeals from the district court's imposition of two special conditions of supervised release.  We affirm.

I.

Over a span of three or four years, Shultz downloaded hundreds of images and dozens of videos of child pornography.  Some files depicted children as young as six; many showed sadistic, masochistic or violent behavior.  Shultz used file-sharing software to make some of his pornography available for others to download.

In 2010, Shultz pled guilty to receiving child pornography, 18 U.S.C. § 2252A(a)(2)(A), and to possessing child pornography, 18 U.S.C. § 2252A(a)(5)(B). The district court sentenced Shultz to 171 months in prison followed by lifetime supervised release subject to a series of special conditions.  Shultz appealed, claiming that the district court improperly lengthened his prison term in order to promote his rehabilitation.  We agreed, *see Tapia v. United States*, 131 S. Ct. 2382, 2385 (2011), and sent the case back for a fresh sentencing.  This time the district court imposed a sentence of 168 months in prison, again followed by lifetime supervised release, again subject to a series of special conditions.

Shultz appeals once more.  He now challenges two of the district court's twelve conditions of supervised release: condition four, which restricts his contact with children, and condition six, which restricts his possession of sexually arousing material.

II.

The government says that Shultz forfeited his challenge to the supervised release conditions because he did not argue the point in his first appeal.  But when Shultz objected to these conditions during his re-sentencing, the government said nothing about

forfeiture in response.  Shultz may have forfeited his challenge, but if so the government forfeited the forfeiture.  *See United States v. Turner*, 602 F.3d 778, 783 (6th Cir. 2010).

III.

Condition four reads:  "[Shultz] shall not associate and/or be alone with children under 18 years of age, nor shall he be at any residence where children under the age of 18 are residing, without the prior written approval of the probation officer.  In addition, [Shultz] shall not visit, frequent, or remain about any place where children under the age of 18 normally congregate (public parks, playgrounds, etc.) or any business that caters to and/or targets child customers."  R. 39 at 5.  Shultz says the condition violates (1) the sentencing statute, (2) the Article III non-delegation doctrine, (3) his First Amendment rights of association and assembly, (4) the Fifth Amendment prohibition against vague laws and (5) his right to interact with his own family.  All five arguments fail.

*18 U.S.C. § 3583(d).*  Shultz complains that condition four oversteps two limits established by the sentencing statute.  One, a condition of supervised release must be "reasonably related" to various sentencing factors, including the nature of the offense and the characteristics of the defendant.  18 U.S.C. § 3583(d)(1).  And two, a condition must involve "no greater deprivation of liberty than is reasonably necessary" to deter crime, protect the public and rehabilitate the defendant.  *Id.* § 3583(d)(2).

In view of the district court's front-row seat at the proceedings and its sentencing experience, we generally respect its imposition of supervised-release conditions in the absence of an abuse of discretion.  *United States v. Alexander*, 509 F.3d 253, 256 (6th Cir. 2007).  This case illustrates why.  The judge not only interacted with the defendant at this sentencing hearing but also throughout the case.  This sentencing hearing, indeed, was not the first time the district court evaluated the danger Shultz posed to children.  After Shultz pled guilty, the court ordered that Shultz "not be in the presence of his own minor children without the presence of another adult" pending sentencing.  R. 27 at 34.  Appellate judges sitting far away and reviewing a case months if not years later should give the benefit of the doubt to trial judges faced with the difficult task of sentencing individuals.  "While trial judges sentence individuals face to face for a living, we review

transcripts for a living.  No one sentences transcripts." *United States v. Poynter*, 495 F.3d 349, 351 (6th Cir. 2007).

We also must respect the policy choices Congress made when it adopted the supervised release statute.  In the main, Congress authorized only short terms of supervised release.  For class A felonies, the most serious category of federal offenses, a supervised release term ordinarily may not exceed five years.  18 U.S.C. § 3583(b)(1).  Child pornography crimes fall into a discrete group of offenses in which Congress went further, mandating a *minimum* supervised release term of five years and authorizing a maximum term of life.  *Id.* § 3583(k).  This does not mean anything goes when a defendant is convicted of a child pornography offense, but it does suggest that Congress saw a grave danger to public safety from known users of child pornography, beyond the danger posed by a run-of-the-mine felon.

In view of Congress's general judgment that child pornography offenses deserve strict conditions of supervised release and the district court's particular judgment that rigor was warranted in the case at hand, Shultz cannot prevail.  *Cf. United States v. Buchanan*, 449 F.3d 731, 736 (6th Cir. 2006) (Sutton, J., concurring) ("[T]he alignment of the views of the Sentencing Commission with the independent views of a sentencing judge" entitles a sentence to special respect.).  The district court had good reason to fear that Shultz might sexually assault children.  Shultz was not a one-time offender.  He had spent three or four years assembling a large collection of child pornography to the tune of more than 700 images and 60 videos.  Worse still, some of Shultz's files depicted *adults* having sexual intercourse with children.  The scope and content of Shultz's collection displays a preoccupation with sex involving children, and the district court could reasonably conclude that he might one day act upon this fascination by sexually assaulting a child.

Nor was the possibility of assault remote.  Many of his files depicted sadistic, masochistic or otherwise violent abuse of children.  And Shultz had a propensity for violence.  He has one conviction for domestic assault and one for aggravated assault.  In the latter case, he "pinned [his wife] down in the bathroom, where he repeatedly

banged her head on the floor while holding her down. [She] then attempted to flee the residence, only to be grabbed and slung into a wall, causing further bodily injury . . . ." PSR 12.

Condition four reasonably responds to these reasonable concerns and complies with § 3583(d) in doing so. The district court, to begin, did not go astray in requiring Shultz to receive his probation officer's written approval before associating with, being alone with or being in the same residence as a child. The probation officer is well placed to assess whether Shultz poses a danger to a particular child, making it reasonable to entrust him with responsibility for deciding whether the child would be safe when left in Shultz's company. *See, e.g.*, *United States v. Mickelson*, 433 F.3d 1050, 1057 (8th Cir. 2006) (upholding similar condition).

Nor did the district court commit reversible error in prohibiting Shultz from going near "any place where children . . . normally congregate . . . or any business that caters to [or] targets child customers." The prohibition is strict but for good reason. A sexual predator near a park or a playground puts at risk not just one or two children but a lot of them. Beyond that, children at such locations are often unattended, exposing them to heightened risks of assault. The numerosity and heightened vulnerability of potential victims at these places made it proper for the district court to bar Shultz from frequenting them. It was also proper for the district court to adopt a categorical restriction upon Shultz's movement, as opposed to one that leaves matters to the discretion of the probation officer. An officer can make an individualized assessment of the risk Shultz poses to a potential victim when Shultz interacts with one child or even with a small group of children; not so, or at least less so, when the potential victims are the juvenile general public. No abuse of discretion occurred. *See, e.g.*, *United States v. Lewis*, 2012 WL 5382948, at *7 (6th Cir. Nov. 5, 2012) (upholding similar condition).

In response to all this, Shultz says that severe restrictions upon a convict's movement or association with children are never reasonable when the convict "only" received or possessed child pornography. Something more, he says, is required, such as physical abuse of children. But in this case, there *is* something more: Shultz's multi-

year history of collecting pornography; the size of his collection; his files' depiction of adults having sexual intercourse with children; their depiction of sadism, masochism and violence; and Shultz's prior assault convictions.  Shultz may not yet have attacked a minor, but a sex offender does not get one free pass at child molestation before *prophylactic* rules of supervised release designed to protect children become appropriate.  *See, e.g.*, *United States v. Zobel*, 696 F.3d 558, 575 (6th Cir. 2012); *United States v. Kerr*, 472 F.3d 517, 522–23 (8th Cir. 2006).

*Article III non-delegation doctrine.*  The Constitution vests the "judicial power of the United States" in the federal courts, and they may not hand that power over to executive officials.  U.S. Const. art. III, § 1; *see United States v. Logins*, 503 F. App'x 345, 349 (6th Cir. 2012); *Whitehead v. United States*, 155 F.2d 460, 462 (6th Cir. 1946).  Shultz argues that the district court violated this principle by letting the probation officer decide when Shultz may interact with children.

Some federal appellate courts might well conclude that condition four violates Article III.  *See United States v. Voelker*, 489 F.3d 139, 154–55 (3d Cir. 2007); *United States v. Kieffer*, 257 F. App'x 378, 381 (2d Cir. 2007) (summary order).  But other circuits might uphold it.  *See United States v. Rodriguez*, 558 F.3d 408, 416 (5th Cir. 2006); *United States v. Mitnick*, 145 F.3d 1342, 1342 n.1 (9th Cir. 1998) (unpublished memorandum opinion).  Still another has noted the issue but avoided it.  *See United States v. Stults*, 575 F.3d 834, 851 n.5 (8th Cir. 2009).  Our own court has not yet answered this question, and happily we need not do so today.  Shultz never raised his constitutional objection below, so we need only inspect the district court's judgment for plain error.  Fed. R. Crim. P. 52(b).  As the division of authority just mentioned confirms, any error on this score (if error there was) was not plain.  *See United States v. Alexander*, 217 F. App'x 417, 422 (6th Cir. 2007).

*First Amendment right to associate with children.*  Shultz next argues that condition four violates his constitutional right to associate and assemble with children.  First things first, however: "[I]t is impossible to determine whether a [condition] reaches too far without first knowing what the [condition] covers."  *United States v. Williams*,

553 U.S. 285, 293 (2008).   Noting that condition four says that Shultz "shall not associate" with a child unless he gets his probation officer's approval, Shultz argues that the ban extends to "telephonic or written" communication with minors.

True, "associate" is a word of many meanings, and some of them would cover merely talking to or even joining the same political party as a child.   But in the context of condition four, to "associate" with a child means only to keep company with him. *First*, this interpretation gives "associate" a natural, though not its only, definition.  *See Webster's Second New International Dictionary* 167 (1953)  (defining "associate" to mean "to accompany; keep company with").  *Second*, words draw meaning from their neighbors.  Every other type of conduct prohibited by condition four—to "be alone" with children, to "be at any residence" where children reside and to "visit, frequent, or remain about" any place children congregate—involves physical proximity with children. Context suggests that this common thread runs through the ban on association as well. *Third*, our interpretation is consistent with *Arciniega v. Freeman*, 404 U.S. 4 (1971) (per curiam), which held that a condition that forbade a parolee to "associate" with ex-convicts did not "apply to incidental contacts" (in that case, working for the same employer).

Interpreted this way, the prohibition upon "associat[ing]" with minors does not violate Shultz's First Amendment rights.   "[W]e have approved supervised release conditions affecting constitutional rights so long as they were directly related to the defendant's rehabilitation and the protection of the public."  *United States v. Nixon*, 664 F.3d 624, 627 (6th Cir. 2011).  Condition four, for reasons already explored and explained, readily satisfies this criterion.

*Fifth Amendment void for vagueness.*   Judges imposing supervised release conditions, no less than legislatures passing statutes, must obey the prohibition against vague laws embedded in the Fifth Amendment's Due Process Clause.  Shultz thinks condition four's restriction upon "associat[ing]" with minors transgresses this principle. But a condition, no less than a statute, need not spell out every one of its applications. It need only fix "an ascertainable standard of guilt."  *United States v. L. Cohen Grocery*

*Co.*, 255 U.S. 81, 89 (1921). The restriction upon association clears this bar, especially given the limiting construction we just put on it. *See United States v. Soltero*, 510 F.3d 858, 865 (9th Cir. 2007) ("The term 'associate' is . . . not . . . impermissibly vague."); *Birzon v. King*, 469 F.2d 1241, 1243 (2d Cir. 1972) ("[T]he word 'associate' in the parole condition is not unconstitutionally vague . . . .").

Shultz also perceives unconstitutional vagueness in condition four's failure to list all of the places from which Shultz is forbidden, noting that it refers to "any place where children . . . normally congregate (public parks, playgrounds, etc.)." This argument collides with *United States v. Zobel*, which upheld a comparable condition banning "loitering where minors congregate, such as playgrounds, arcades, amusement parks, recreation parks, sporting events, shopping malls, swimming pools, etc." 696 F.3d at 575.

*Right to associate with family.* The Constitution protects a parent's right to raise his children. *See Troxel v. Granville*, 530 U.S. 57, 66 (2000). Shultz complains that condition four violates this right and imposes a "greater deprivation of liberty than is reasonably necessary," 18 U.S.C. § 3583(d)(2), because it restricts his interaction with his three young children. As an initial matter, Schultz overlooks the reality that he may seek permission from his probation officer to contact or even live with his children. *See United States v. Simons*, 614 F.3d 475, 482 (8th Cir. 2010); *United States v. Smith*, 606 F.3d 1270, 1284 (10th Cir. 2010).

No less significantly, the conditions of supervised release kick in only when Shultz's 14-year term of imprisonment ends—and by that time all of Shultz's children will be adults, beyond condition four's reach. Shultz's objection thus concerns only hypothetical children and grandchildren not yet in being. Potential future descendants may suffice to invalidate a contingent remainder under the rule against perpetuities, but they do not suffice to invalidate a condition of supervised release under § 3583(d). *See Lewis*, 2012 WL 5382948, at *7. Still less may they invalidate the condition under the Constitution: "[T]he delicate power" of constitutional adjudication "is not to be exercised with reference to hypothetical cases thus imagined." *United States v. Raines*,

362 U.S. 17, 22 (1960).  Should family members to whom condition four applies come into being, Shultz may ask the district court then, not now, to exercise its statutory power to "modify [or] reduce . . . the conditions of supervised release."  18 U.S.C. § 3583(e)(2); *see also Zobel*, 696 F.3d at 575 (making similar recommendation).

IV.

Condition six reads: "[Shultz] shall not possess any material, such as printed photographs, paintings, recorded material, or electronically produced material that he may use for the purpose of deviant sexual arousal.  Nor shall he visit, frequent, or remain about any place where such material is available to him for the purpose of deviant sexual arousal."  R. 39 at 5.  Shultz says this condition violates (1) the sentencing statute, (2) his First Amendment right to receive speech and (3) the Fifth Amendment prohibition against vague laws.

Before turning to the specifics of Shultz's arguments, a few observations are in order.  Few things tax legal drafting so much—or so well vindicate Madison's observation that "no language is so copious as to supply words and phrases for every complex idea, or so correct as not to include many equivocally denoting different ideas," *The Federalist*, No. 37, at 236 (Jacob Cooke ed. 1961)—as writing rules about sexual speech.  The legislative branch is well acquainted with the  problem.  Overbreadth or vagueness in Congress's attempts to regulate speech about sex has often compelled a return to the drawing board.  *See, e.g.*, *United States v. Stevens*, 559 U.S. 460 (2010) (regulation of animal crush pornography); *Ashcroft v. Free Speech Coalition*, 535 U.S. 234 (2002) (regulation of child pornography); *United States v. Playboy Entm't Grp.*, 529 U.S. 803 (2000) (regulation of sexual programs on television); *Reno v. ACLU*, 521 U.S. 844 (1997) (regulation of sexual material on the internet).  The judicial branch is no less familiar with the challenge.  The task of defining obscenity prompted an aside ("I know it when I see it") that implied the occasional difficulty, if not impossibility, of using words to describe the concept.  *Jacobellis v. Ohio*, 378 U.S. 184, 197 (Stewart, J., concurring) ("I shall not attempt further to define the kinds of material I understand to be embraced within [hard-core pornography], and perhaps I could never succeed in

intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that.").

It is well to keep these difficulties in mind when reviewing supervised release conditions, which, when done wisely, benefit criminal defendants and the public alike by facilitating sooner rather than later re-entry into society. The conditions as a result should "be written—and must be read—in a commonsense way." *United States v. Phipps*, 319 F.3d 177, 193 (5th Cir. 2003) (internal quotation marks omitted). This is not the Internal Revenue Code. Pursuit of drafting perfection does little good and threatens much harm. It took sixteen years of trial and error for the Supreme Court to work out a suitable definition of obscenity. *See Miller v. California*, 413 U.S. 15, 19–23 (1973). The process of allowing criminal defendants to re-enter society would break down if we launched a similar multi-year project every time a new child pornography sentence came along.

At the same time, we cannot hide from insisting on narrower supervised release conditions when necessary or construing such conditions narrowly when appropriate. In this last respect, supervised release conditions differ from statutes. Some caution is required when offering a limiting construction to an act of Congress, lest we "substitute the judicial for the legislative department of government." *United States v. Reese*, 92 U.S. 214, 221 (1875); *see also Free Enter. Fund v. PCAOB*, 130 S. Ct. 3138, 3162 (2010). But no comparable danger holds appellate courts back when they interpret a condition of supervised release, a product of the same branch of government.

That leads to a third observation. Courts would do well to show restraint in entertaining facial challenges to conditions of supervised release. In this setting, the usual justifications for allowing facial challenges lose much of their force. The defendant's own freedom of speech will rarely justify invalidating a condition on its face; a convict out on supervised release enjoys weaker First Amendment rights than the ordinary citizen. *See Nixon*, 664 F.3d at 627; *see also Pa. Bd. of Prob. & Parole v. Scott*, 524 U.S. 357, 365 (1998) ("Parole is a variation on imprisonment of convicted criminals in which the State accords a limited degree of freedom in return for the

parolee's assurance that he will comply with the often strict terms and conditions of his release."). Nor does the desire to protect the free speech rights of third parties provide much support; unlike an overly broad law, which threatens to mute many speakers besides the challenger, *see Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973), a supervised release condition binds just one defendant.

By contrast, the costs of entertaining facial challenges remain high; indeed, they get worse. Facial challenges encourage courts to adjudicate cases on the basis of hypothetical applications of the condition's language that may or may not come to pass. Making matters worse, most supervised release conditions will not become relevant for many years, in this case 14 years. Much can happen during a prison term, and much of it may support a modification to the conditions of supervised release when the sentence ends. *See* 18 U.S.C. § 3583(e)(2) (allowing courts to "modify, reduce, or enlarge the conditions of supervised release" if appropriate). Far better, it seems to us, to deal with borderline or uncertain supervised release conditions by urging the defendant to seek a modification as the date for release approaches, as opposing to sparring about close calls a decade before they become relevant.

With these observations in mind, we turn to Shultz's objections to condition six.

*18 U.S.C. § 3583(d) and First Amendment.* Shultz argues that condition six abridges the freedom of speech and involves a "greater deprivation of liberty than is reasonably necessary" to achieve the purposes of supervised release. 18 U.S.C. § 3583(d)(2). As Shultz reads the condition, it has no limits, as he might use almost anything—say a description of sex in a science textbook or a photograph of a clothed child—for titillation. That broad reading of the provision might indeed create problems, both under the sentencing statute and the First Amendment. *See Zobel*, 696 F.3d at 575–78.

Yet a fairer, more common sense reading of condition six exists—that it covers only material *designed* (in a reasonably objective sense) to produce deviant sexual arousal. So interpreted, the condition may stand. It is reasonable to prevent Shultz from

possessing material whose purpose is the provocation of his sexual interest in children. By stimulating the sexual impulses that led Shultz to download child pornography in the first place, this material both threatens public safety and hinders Shultz's rehabilitation. The restriction at hand thus takes away only as much liberty as "is reasonably necessary" under the circumstances. 18 U.S.C. § 3583(d)(2). For similar reasons, condition six complies on its face with the First Amendment. As we have explained, supervised release conditions pass constitutional inspection "so long as they [are] directly related to the defendant's rehabilitation and the protection of the public." *Nixon*, 664 F.3d at 627.

*Fifth Amendment void for vagueness.* Shultz argues that condition six's use of the word "deviant" makes it impermissibly vague. That is not an inconsequential argument. *Cf. Brown v. Entm't Merchs. Ass'n*, 131 S. Ct. 2729, 2745–46 (2011) (Alito, J., concurring in the judgment) (concluding that a state law offended the vagueness doctrine by regulating violent video games that appeal "to a deviant or morbid interest of minors"). But we can avoid this difficulty by reading "deviant" to cover only Shultz's interest in child sex. Context provides one reason to read condition six in this way; the conviction after all concerns child pornography, not incest or bestiality or some other sexual taboo. *Skilling v. United States* provides another; it holds that a court may "pare [a legal provision] down to its core" in order to sidestep a serious vagueness problem. 130 S. Ct. 2895, 2928 (2010). The government informed us at oral argument that it had no objection to this narrowing construction. To promote clarity going forward, it may be worthwhile for district courts to replace "deviant sexual arousal" with something more definite, such as "arousal of sexual interest in children."

V.

For these reasons, we affirm.