NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0126n.06

No. 22-5215

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Mar 14, 2023
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Appellee, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| RICKY DAVIS, | ) THE EASTERN DISTRICT OF |
| Defendant-Appellant. | ) TENNESSEE |
| | ) |
| | ) |
| | ) |

Before: McKEAGUE, THAPAR, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Ricky Davis pleaded guilty to distributing methamphetamine and fentanyl analogues. Thereafter, Davis moved to withdraw his guilty plea. The district court denied this motion. At sentencing, Davis renewed his motion to withdraw his plea, which the district court denied for a second time. The district court also required Davis to attend anger-management therapy as a condition of supervised release. Davis appeals both these rulings as well as the denial of a pre-plea motion to suppress evidence. We AFFIRM the district court's judgment.

I.

On June 15, 2017, Ricky Davis sold drugs to two men: Scott Wardley and "C.R." During the sale, Davis claimed that the drugs were a mixture of methamphetamine and heroin, but the substance was actually a mixture of methamphetamine and fentanyl analogues (acryl fentanyl and methoxyacetyl fentanyl). After C.R. and Wardley took the drugs, C.R. overdosed and eventually

died. A neighbor found C.R. "slumped over a chair" outside the front door of an apartment. When police arrived to investigate, they found an "unresponsive" C.R.; they also found Wardley attempting to dispose of the meth-and-fentanyl mixture. On Wardley's phone, police discovered text messages between Wardley and Davis about the sale of methamphetamine and heroin, including a text that Wardley had sent Davis the day prior about buying the drug mixture that ultimately killed C.R.

About eight months later, police pulled Davis over while he was driving a Honda Accord a few blocks away from his home. Police arrested Davis for driving with a revoked license. A drug dog alerted on the Honda and on Davis's Cadillac, which was parked nearby. Police searched the Honda and found a marijuana cigarette as well as the keys to the Cadillac. The police searched the Cadillac and found 18 packs of Suboxone, 137 Xanax pills, and 86.4 grams of methamphetamine in 23 separate bags.

A federal grand jury charged Davis with four drug offenses related to the distribution of methamphetamine and fentanyl analogues, including the drug mixture that killed C.R. Davis moved to suppress the evidence recovered from the vehicles on Fourth Amendment grounds. The district court denied the motion. Davis entered an unconditional guilty plea to aiding and abetting the distribution of methamphetamine and two fentanyl analogues in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C). The plea agreement, entered pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), agreed to a sentence of 144 months in prison and five years of supervised release.

The district court held a hearing to determine whether to accept Davis's guilty plea. At the hearing, Davis stated that he understood the material elements of his plea agreement, including his sentence, the facts stated in the agreement, and that he was pleading guilty because he was in fact

guilty. The district court accepted Davis's plea, finding that he had offered it knowingly and voluntarily. Twenty-seven days after the hearing, Davis moved to withdraw his plea. He argued that he had "asserted his innocence at every stage in these proceedings" and had pleaded guilty only because he believed that, if he did not, the government would blame him for additional deaths aside from C.R.'s and would claim that Davis had hired someone to kill a government witness. The district court denied this motion.

At sentencing, Davis again moved to withdraw his guilty plea. The district court denied this motion and sentenced him to 144 months' imprisonment and five years' supervised release. As a condition of supervised release, the court required Davis to participate in a program that addresses "domestic violence, anger management, or general violence." Davis now appeals, challenging the district court's denials of his motions to suppress evidence and to withdraw his guilty plea, as well as the court's imposition of the anger management program as part of his supervised release.

## II.

Davis did not enter a conditional plea, reserving the right to challenge the denial of his suppression motion, so he is precluded from raising that challenge now. *See United States v. Vasquez-Martinez*, 616 F.3d 600, 604 (6th Cir. 2010) ("It is elemental that a guilty pleading defendant may not appeal an adverse pre-plea ruling on a suppression of evidence motion unless he has preserved the right to do so by entering a conditional plea of guilty." (quoting *United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001))). We also note that, by its terms, Davis's plea agreement appears to foreclose his ability to raise the other challenges he makes now. Davis agreed that he "will not file a direct appeal of [his] conviction(s) or sentence with one exception: The defendant retains the right to appeal a sentence imposed above the sentencing

guideline range determined by the Court or above any mandatory minimum sentence deemed applicable by the Court, whichever is greater." Curiously, though, the government has not invoked the appeal waiver, so we proceed to the merits of Davis's other two claims. *See United States v. Hampton*, 732 F.3d 687, 690 (6th Cir. 2013).

## A.

Davis challenges the district court's denial of his renewed motion to withdraw his guilty plea. We review this determination for an abuse of discretion. *United States v. Catchings*, 708 F.3d 710, 717 (6th Cir. 2013). "A district court abuses its discretion where it relies on clearly erroneous findings of fact, or when it improperly applies the law or uses an erroneous legal standard." *Id.* (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)). Federal Rule of Criminal Procedure 11(d)(2)(B) allows a defendant to withdraw a guilty plea before sentencing if "the defendant can show a fair and just reason for requesting the withdrawal." We have explained that "the aim of the rule is to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Benton*, 639 F.3d 723, 727 (6th Cir. 2011) (quoting *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994)).

When determining whether the defendant can withdraw his plea, the district court is to consider the totality of the circumstances, including seven relevant guideposts, none of which is dispositive. *Bashara*, 27 F.3d at 1181; *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). Those guideposts are:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the

defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Bashara*, 27 F.3d at 1181. The district court analyzed each of these factors when it denied Davis's first motion and found that they weighed "just as heavily" against Davis when it denied his renewed motion at sentencing.

The district court did not abuse its discretion in refusing Davis's motion for plea withdrawal. First consider the amount of time between Davis's plea and his motion to withdraw—twenty-seven days. Our cases have suggested that a delay of "a few days" cuts in favor of allowing plea withdrawal. *See United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987). By contrast, we have, under various circumstances, considered delays of 35 or 42 days to cut against plea withdrawal. *See id.* (five-week delay); *Bashara*, 27 F.3d at 1181 (six-week delay). Here, the district court found Davis's 27-day delay "significant." Davis contends that this was error, suggesting, on the strength of one unpublished case, that a motion filed within 30 days categorically "falls within [the defendant's] favor." Appellant Br. at 12 (quoting *United States v. Jannuzzi*, 2009 WL 579331, at *3 (6th Cir. Mar. 6, 2009) (stating that a 30-day delay lies "at the boundary line between what is acceptable and what is not")). We do not read our published authority as establishing such a bright line rule. Instead, we have generally treated the length of delay and the reasons for it as interrelated: "The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996) (citation omitted). But even if we were to treat Davis's 27-day delay as being just inside the "boundary line [for] what is acceptable," this factor would weigh

only "slightly" in his favor. *Jannuzzi*, 2009 WL 579331, at *3. And Davis still couldn't prevail considering the other factors.

As to whether Davis had a valid reason for not moving to withdraw the plea earlier, the district court rejected the idea "that a large amount of supplemental discovery caused [Davis] to become overwhelmed and enter into a plea agreement despite his innocence," noting that Davis received the discovery materials "nearly fifty (50) days before he pled guilty." Davis does not contest that conclusion on appeal. Indeed, all he says in this court is that "there is nothing in the record that would suggest he could have filed his motion any earlier." That is insufficient to show error in the district court's analysis of this factor.

The district court also concluded that the maintenance-of-innocence factor weighed against Davis. In response, Davis argues that he asserted his innocence when his prior attorney said that Davis wanted a trial, not a plea deal, and when he renewed his motion to withdraw his guilty plea at his sentencing hearing. But neither of these are assertions of innocence: a desire to stand trial is not the same as declaring one's innocence; and belated claims of innocence at sentencing are "insufficient to justify withdrawal of a guilty plea." *See United States v. Gasaway*, 437 F. App'x 428, 434 (6th Cir. 2011) (citation omitted).

Finally, the district court concluded that Davis knowingly and voluntarily pleaded guilty. The court was right: The district court held a thorough Rule 11 hearing in which Davis repeatedly assured the court that he understood his plea and stated that no one forced him, threatened him, or promised him anything outside his plea agreement. Davis counters now that his plea was not knowing because he did not have access to all the discovery evidence until after he pleaded guilty and because he later learned that the government had access to witnesses that he did not know about until sentencing. As to the witnesses, defendants are not entitled to the government's witness

list before trial, *United States v. Davis*, 306 F.3d 398, 420 (6th Cir. 2002), much less before entry of a guilty plea. As to the discovery, Davis's appellate briefs don't specify what evidence he believes he did not receive, or how that evidence would have helped, or harmed, his case. In the district court, he alluded to some "text messages," but again failed to describe them or explain their import. That skeletal showing is insufficient to facilitate our review. But, to the extent Davis is attempting to raise a claim under *Brady v. Maryland*, 373 U.S. 83 (1963), the district court found that the government had provided the discovery to Davis's attorneys, so no *Brady* claim could lie regardless of the evidence's character. And it is questionable whether *Brady* rights attach before entry of a guilty plea in any event. *See United States v. Ruiz*, 536 U.S. 622, 633 (2002) (no *Brady* right to impeachment evidence before plea bargaining); *Robertson v. Lucas*, 753 F.3d 606, 621 (6th Cir. 2014) (no "clearly established right to receive exculpatory *Brady* material prior to plea bargaining"). Factor four, therefore, cuts against withdrawal. *Catchings*, 708 F.3d at 718–19.

Lastly, Davis concedes that the fifth and sixth factors cut against him. Because Davis has not "put forth a fair and just reason for allowing withdrawal of his plea" under the first six factors, we have no occasion to consider any prejudice to the government. *See id.* at 719. Davis has not shown that the district court abused its discretion in denying his motion to withdraw his guilty plea.

## B.

The district court ordered Davis to participate in a "domestic violence, anger management, or general violence" program as a condition of supervised release. Davis challenges this requirement on appeal. But he did not object in the district court when given the chance, so we review for plain error. *United States v. Zobel*, 696 F.3d 558, 566 (6th Cir. 2012). That means that Davis "must show (1) error (2) that was obvious or clear (3) that affected defendant's substantial

rights and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (quoting *United States v. Phillips*, 516 F.3d 479, 487 (6th Cir. 2008)).

Davis contends that the anger-management condition "oversteps two limits established by the sentencing statute": that the condition be reasonably related to the various sentencing factors, including the history and characteristics of the defendant, and that it involve "no greater deprivation of liberty than is reasonably necessary to deter crime, protect the public, or rehabilitate the defendant." *United States v. Shultz*, 733 F.3d 616, 619 (6th Cir. 2013) (citation omitted); 18 U.S.C. §§ 3583(d)(1), (d)(2).

Davis cannot show plain error in the district court's imposition of anger management classes. Davis objects that the special conditions are not related to the instant drug offense, but they need not be, so long as they are supported by the defendant's criminal history. *United States v. Childress*, 874 F.3d 523, 527 n.2 (6th Cir. 2017). Davis's PSR recommended violence treatment on the ground that "the defendant has been arrested for assaultive behavior. This condition will assist the probation officer in monitoring the defendant for protection of the community." A defendant is deemed to admit any factual matter in a PSR to which he does not object. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008); Fed. R. Crim. P. 32(i)(3)(A) ("At sentencing, the court may accept any undisputed portion of the presentence report as a finding of fact."). And we cannot say that the district court plainly erred by imposing anger management training in response to "assaultive behavior."

Davis now objects that neither the PSR nor the district court identified the particular "assaultive" acts it was referring to. But "the district court was not required to make detailed factual findings in these circumstances." *United States v. Scudder*, 746 F. App'x 454, 459 (6th Cir. 2018). "It must make specific rulings only on the 'disputed' or 'controverted' portions of a

PSR." *Id.* (citing Fed. R. Crim. P. 32(i)(3)(B)). Moreover, the record reveals a history of violence: Davis robbed two women in 1994, was arrested for domestic assault against his pregnant girlfriend in 2002, and, while detained pending trial in this case, was involved in a "physical altercation" that resulted in a scar on his right arm and back.

On appeal, Davis offers various reasons why the district court should not have countenanced the aggressive acts in his record: the robbery convictions are too old, and the PSR's description of the 2002 assault charge and recent physical altercation are both susceptible to the interpretation that Davis was the victim, rather than the aggressor. As to the latter, it is too late to contest the PSR's factual characterization of Davis's behavior as "assaultive." If Davis had factual distinctions to make, he needed to make them at sentencing. *See Scudder*, 746 F. App'x at 459; Fed. R. Crim. P. 32(i)(3)(B). As to the former, Davis is right that prior convictions may sometimes be too temporally remote to justify a supervised release condition. *See e.g.*, *United States v. Carter*, 463 F.3d 526, 532 (6th Cir. 2006); *United States v. Thomas*, 212 F. App'x 483, 486 (6th Cir. 2007). But our precedent for "how old is too old" is mixed. *See e.g.*, *United States v. Brogdon*, 503 F.3d 555, 565 (6th Cir. 2007); *United States v. Cabrera-Jimenez*, 545 F. App'x 385, 389 (6th Cir. 2013). And we have never established a "per se rule marking the temporal bounds of a sentencing court's inquiry" when mandating a special condition of supervised release. *Id.* (citing *Carter*, 463 F.3d at 532). This lack of clear guidance precludes a finding of plain error. *See United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015). Thus, the district court did not plainly err by imposing the special condition.

* * *

We AFFIRM.