NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0234n.06

No. 24-5565

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

May 08, 2025

KELLY L. STEPHENS, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| JASON PATE, | ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: CLAY, READLER, and DAVIS, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Jason Pate appeals the district court's imposition of a special condition of supervised release that requires him to participate in a sex offender assessment, treatment program, and polygraph tests, pursuant to 18 U.S.C. § 3553(a) and 18 U.S.C. § 3583(c). For the reasons set forth below, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

In 1998, Defendant Jason Pate sustained his first conviction for Possession of Child Pornography after trafficking in child sexual abuse material ("CSAM") featuring prepubescent children. Despite this conviction, Pate continued to "amass large amounts of CSAM" over the next several years. Appellee Br., ECF No. 21, 3. By 2008, Pate was married with a newborn baby, and was again caught in possession of CSAM by a family member who had been searching for photographs of the baby. Law enforcement then obtained a warrant to search Pate's home and uncovered "an extensive network of computers" yielding 176,755 images and 2,670 videos of

CSAM that Pate had collected over the years. *Id.* The CSAM depicted mostly underaged girls, from infancy through childhood, engaged in disturbing sexual acts including anal penetration and bondage. The search also revealed that Pate had been communicating with other individuals involved in the trade, distribution, and advertisement of CSAM.

On May 13, 2009, a grand jury charged Pate with nine counts of Transportation of Child Pornography in violation of 18 U.S.C. § 2252A(a)(1), one count of Receipt of Child Pornography in violation of 18 U.S.C. § 2252A(a)(2), one count of Advertising of Child Pornography in violation of 18 U.S.C. § 2251(d)(1), and one count of Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5). As part of a plea agreement with the government, Pate pled guilty to Transportation of Child pornography (Count One), Receipt of Child Pornography (Count Ten), and Possession of Child Pornography (Count Twelve), resulting in a 180-month sentence of incarceration and twenty years of supervised release. The district court then imposed several conditions of supervised release, restricting Defendant's access to computers and other electronic devices capable of data storage, requiring his participation in mental health and sex offender treatment programs, and prohibiting him from visiting any areas frequented by children.

Toward the end of Defendant's incarceration sentence, he met with a U.S. Probation Officer to discuss his upcoming supervision. After noticing that Defendant's conditions of supervised release were more lenient than the type typically imposed for similarly situated offenders, the Probation Officer obtained Defendant's waiver to modify one of the conditions, which included a waiver of the right to assistance of counsel. Defendant signed the waiver, and the condition was modified as follows: "The defendant shall participate in sex offender assessment/treatment and polygraph examinations as recommended by the treatment provider or as directed by the probation

officer." Pet. to Modify the Conditions or Term of Supervision, R. 77, Page ID #239. The district court approved the modification.

On September 1, 2021, Defendant began his term of supervised release. He soon violated his special conditions of supervised release and requested the assistance of counsel. After just four months, Defendant was terminated from the sex offender treatment program and filed a motion to vacate the modification of his supervised release conditions, which the government opposed. After a protracted process, the parties reached an agreement on how to proceed by asking the district court for a hearing to resolve the modification of Defendant's special conditions of supervised release.

On February 3, 2023, the government filed a Motion to Impose Sex Offender Special Conditions of Supervised Release. The government requested that the district court impose the following special condition: "The defendant shall participate in sex offender assessment and treatment, including, but not limited to, polygraph examinations recommended by the treatment provider and as directed by the U.S. Probation Office. The defendant shall contribute to the cost as determined by the U.S. Probation Office." Mot. to Impose Sex Offender Special Conditions of Supervised Release, R. 159, Page ID #599. In response to the government's motion, Defendant described the proposed special condition as "an improper delegation to the probation officer [to determine the course of treatment] and to a mystery 'treatment provider,'" among other objections. Def.'s Resp. to Gov't's Mot., R. 160, Page ID #667 (citation omitted).

On April 26, 2024, the district court held a modification hearing on the government's motion to modify Defendant's special conditions of supervised release. Prior to the hearing, the parties learned that the U.S. Probation Office had obtained permission for a "one-off, sole-source contract" to pay for Defendant's sex offender treatment with Kevin Smith, a licensed clinical social

worker ("LCSW") and provider whom Defendant had seen previously. Hearing Tr., Page ID #1204–07. Although the parties reached an agreement on most of the special conditions before the district court's hearing, they continued to disagree on the modification of Special Condition Number 1, which prescribed that Defendant would attend sex offender treatment with his chosen provider and submit to polygraphs.

During the hearing, the district court spent an extensive amount of time addressing the parties' concerns related to Special Condition Number 1 ("the Condition" or "Number 1"), including its delegation of supervisory roles, the extent of the release of Defendant's private information, and the scope and efficacy of polygraphs. Ultimately, Defendant's attorney proposed that the parties "keep working on tweaking" the Condition and expressed that if no agreement could be reached, the court should "split the baby and decide, under its authority, which way it's going to go." Hearing Tr., R. 212, Page ID #1247. The district court agreed to this solution and invited the parties to submit proposed language and details for Special Condition Number 1, and also notified them that the court would "make a decision about No. 1 after receiving [their] submissions." *Id.* at Page ID #1274–75. Defendant's attorney made no objection.

The parties proceeded to submit their positions on the desired language for Special Condition Number 1. In Defendant's position, he wrote that "another hearing would provide the parties the opportunity to answer questions, explain any rational reasons behind proposed language or objections, provide further support for their positions, and debate the goals of the proposed condition." Def.'s Position, R. 206, Page ID #983. The district court denied Defendant's request for a second hearing, stating that "[t]he parties have adequately informed the Court of their positions with respect to the issues, and it now falls on the Court to resolve those issues." Order,

R. 208, Page ID #1027 n.3.  The court further noted its disinclination "to set a hearing for some type of question-and-answer session or a 'debate' about sex offender treatment." *Id.*

The district court then finalized the language of Special Condition Number 1, in pertinent part:

1. The defendant shall participate in a sex offender assessment, treatment, and polygraphs as follows:

    a. Defendant shall submit to a new sex offender-specific risk assessment that shall be performed by a Tennessee licensed professional who adheres to the established ethics, standards, and practices of the Tennessee Sex Offender Treatment Board. The provider who conducts the sex offender risk assessment shall be a different provider than the designated treatment provider. Defendant shall authorize a release of information from the risk-assessment provider to the U.S. Probation Officer and Kevin Smith, LCSW. The release shall allow the U.S. Probation Officer and Kevin Smith to communicate with the risk-assessment provider and obtain results of the assessment.

    b. Defendant shall attend group and/or individual sex offender treatment with Kevin Smith, LCSW, On Your Mind Counseling, LLC. The frequency of treatment shall be determined by the aforementioned treatment provider after the provider's review of a sex offender risk assessment for Defendant (conducted by a different Tennessee licensed professional). Defendant shall authorize a limited release of information from Kevin Smith, LCSW, to the probation officer. The release of information shall allow for Kevin Smith, LCSW, to communicate with the U.S. Probation Officer and shall allow disclosure of information pertaining to any diagnosis, the course of treatment and individualized treatment plan, Defendant's compliance and progression in treatment, attendance records, billing records, and any other information necessary to enable the probation officer to satisfy the statutory requirements set forth at 18 U.S.C. § 3603(2)-(3) to keep informed as to the conduct and condition of Defendant.

    c. Defendant shall submit to polygraph examinations twice per year for the purpose of assisting the treatment provider and the U.S. Probation Officer. In the event deception is indicated during an examination, a follow-up polygraph examination shall be rescheduled within three months. Polygraph results shall not be the basis for a petition alleging a violation of supervised release and shall not be used as the sole basis for ejecting Defendant from a treatment program. However, refusal to submit to a polygraph may be the basis for a petition alleging failure to comply with this condition. Defendant shall authorize a release of information from the polygrapher to the U.S.

Probation Officer and Kevin Smith, LCSW. The release shall allow the U.S. Probation Officer and Kevin Smith, LCSW, to communicate with the polygrapher and obtain results of the examination.

d. The defendant shall contribute to the cost of sex offender assessment, treatment, and polygraphs as determined by the U.S. Probation Office.

*Id.* at Page ID #1027–28. Defendant took issue with the district court's imposition of treatment by Kevin Smith, a private contractor with the U.S. Probation Office, and characterized it as "supervision-by-proxy." Appellant Br., ECF No. 11, 17. He also objected to the court's requirement that he contribute to the cost of his sex offender treatment. In imposing Special Condition Number 1, the district court considered the sentencing factors set forth in 18 U.S.C. § 3553(a), as applied to the supervised release context by 18 U.S.C. § 3583(c). The court "considered applicable case law regarding the extent to which [the Condition] might constitute an improper delegation of judicial authority," and determined that it did not. Order, R. 208, at Page ID #1029. It also distinguished the Condition as being "treatment . . . ordered for purposes of monitoring a defendant in furtherance of the recognized objectives of supervised release," as opposed to "therapy undertaken by a defendant . . . for purposes of personal healing, growth, etc." *Id.* at Page ID #1029–30. This appeal followed.

## II. DISCUSSION

### A. Denial of Second Modification Hearing

We review a district court's imposition of supervised-release conditions for an abuse of discretion. *United States v. Shultz*, 733 F.3d 616, 619 (6th Cir. 2013) (crediting the district court's "front-row seat at the proceedings" and "sentencing experience"). Only in cases where a defendant challenges the district court's constitutional or statutory authority to impose such conditions do we review *de novo*. *United States v. Carpenter*, 702 F.3d 882, 884 (6th Cir. 2012). In the present

matter, we review the court's alleged procedural error for an abuse of discretion. *Shultz*, 733 F.3d at 619.

Defendant argues that the district court committed a procedural error by denying him notice and a second hearing before modifying his conditions of supervised release. He argues that, without a second hearing, he was denied the opportunity to "raise[] objections and concerns" related to the district court's modification. Appellant Br., ECF No. 11, 25. Specifically, he claims he "could have objected" to the court's definition of the word "treatment," as well as questioned the "established ethics, standards, and practices" of the Tennessee Sex Offender Treatment Board ("TSOTB"). *Id.* at 25–26. He also asserts that he did not have prior notice of the court's intent to impose Special Condition Number 1. The government responds that the district court already fulfilled its obligation to Defendant when it held a modification hearing on his special conditions of supervised release, and that Defendant had ample opportunity to discuss and raise objections to Special Condition Number 1 during this hearing. Appellee Br., ECF No. 21, 28–30. We agree with the government.

"Conditions of supervised release or probation must be upheld if they are reasonably related to the goals of probation, rehabilitation of the defendant, and the protection of the public." *United States v. Berridge*, 74 F.3d 113, 118 (6th Cir. 1996) (citing *United States v. Bortels*, 962 F.2d 558, 560 (6th Cir. 1992)). Under the Federal Rules of Criminal Procedure, "[b]efore modifying the conditions of probation or supervised release, the court must hold a hearing." Fed. R. Crim. P. 32.1(c)(1). Courts can modify these conditions "regardless of whether the defendant has violated existing conditions." *United States v. Lowenstein*, 108 F.3d 80, 85 (6th Cir. 1997). Additionally, "a district court must explain its reasoning to a sufficient degree to allow for meaningful appellate review," which is "the touchstone of procedural reasonableness." *United States v. Zobel*, 696 F.3d

558, 566, 569 (6th Cir. 2012) (quoting *United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007) (internal quotation and editorial marks omitted)).

The district court did not abuse its discretion by denying Defendant a second modification hearing. First, the district court clearly satisfied the hearing requirement of Rule 32.1(c)(1) when it set a modification hearing for Defendant on April 26, 2024, for the specific purpose of imposing "sex offender special conditions of supervised release." Hearing Tr., R. 212, Page ID #1197. At the hearing, which lasted a "full day," the court discussed its intent to impose Special Condition Number 1 numerous times in the presence of Defendant and both parties' counsel. Order, R. 208, Page ID #1026. The parties' in-depth discussion of this Condition, both in their position papers and throughout the modification hearing, sufficed to put Defendant on notice of the court's intent to impose it.

Defendant's attorney even suggested a plan to address Special Condition Number 1 by submitting a "proposed order" to the court with the parties' desired language, or alternatively, if an agreement could not be reached, by asking the court to "split the baby" and use its "authority" to tweak the condition. Hearing Tr., R. 212, Page ID #1247–48. Afterwards, the district court asked the parties if there was "anything else [they] need[ed] to say on [Special Condition] No. 1," in order to not "take more time than is necessary by continuing the discussion on [Number] 1." *Id.* at Page ID #1248. Defendant did not raise any objections or concerns at that moment, and the court appropriately "exercise[d] its discretion" to impose a revised version of Special Condition No. 1. Order, R. 208, Page ID #1027. The district court need not "hold a *second* modification hearing so that [Defendant] may engage in further 'debate' about the efficacy of the proposed condition." Appellee Br., ECF No. 21, 31 (citation omitted).

Moreover, the district court considered the sentencing factors set forth under 18 U.S.C. § 3553(a) "that are made applicable to the supervised release context by 18 U.S.C. § 3583(c)," such as the severity of the crime, the need for deterrence, the need to protect the public, and the need for correctional treatment. Order, R. 208, Page ID #1028. In revising Special Condition Number 1, the district court considered the nature and circumstances of Defendant's conviction, "including that the offense involved 176,755 images and 2,670 videos involving children, and that Defendant is a repeat child pornographer that has been diagnosed with pedophilia." *Id.* The district court also mentioned the need for deterrence, protecting the public from Defendant's possible future crimes, and providing Defendant "with correctional treatment in the most effective manner." *Id.* The court's discussion of the § 3553(a) sentencing factors is clearly reflected in both the hearing transcript and accompanying order. Even in cases where the district court does not explicitly state its reasoning for imposing a special condition of supervised release, we need not remand if the court's reasons are clearly evinced by the record. *See Berridge*, 74 F.3d at 119 (describing this situation as one of "harmless error"). In the present matter, the district court left no ambiguity in its reasoning to impose Special Condition Number 1.

Defendant argues that a second modification hearing would have allowed him to object to two provisions of Special Condition Number 1: first, the district court's definition of the term "treatment" as meaning "supervision or monitoring by proxy through a private third-party contractor," and second, the "established ethics, standards, and practices of the TSOTB." Appellant Br., ECF No. 11, 26 (internal quotation marks omitted). But the district court already held a lengthy modification hearing on Defendant's conditions of supervised release and was not required to host an additional "question-and-answer session or a 'debate' about sex offender treatment." Order, R. 208, Page ID #1027. In Defendant's own brief, he acknowledges that both

of his objections are rooted in "semantic[s]," which is not a proper basis for remand. Appellant Br., ECF No. 11, 29. Because Defendant already received a modification hearing under Rule 32.1(c)(1), and we are unaware of any authority that would entitle him to a *second* hearing, the district court did not abuse its discretion.

## B. Authority to Impose Sex Offender Treatment Program

We next address Defendant's argument that the district court exceeded its authority by "requiring [him] to submit to supervision or monitoring by a private third-party contractor," as part of his sex offender treatment program. Appellant Br., ECF No. 11, 27. Because Defendant has alleged an error of judicial authority, we review his claim *de novo*. *Carpenter*, 702 F.3d at 884. In imposing Special Condition Number 1, the district court determined that Defendant would attend sex offender treatment with Kevin Smith, a licensed social worker who did not have an existing contract with the U.S. Probation Office but whom Defendant had seen previously for treatment. Defendant now states that the district court improperly defined "treatment" with Kevin Smith to mean "monitoring" instead of "therapy." Appellant Br., ECF No. 11, 28. This argument offers no sound basis for remand.

Congress has decided that "child pornography offenses deserve strict conditions of supervised release," *Shultz*, 733 F.3d at 620, such as the mandatory imposition of sex offender treatment. In imposing such conditions, a sentencing court must heed three requirements. First, the condition must be "reasonably related to" certain sentencing factors under § 3553. 18 U.S.C. § 3583(d)(1). Second, the condition must "involve[] no greater deprivation of liberty than is reasonably necessary" for the purposes served by the factors under § 3553. *Id.* § 3583(d)(2). And third, the condition must be "consistent with any pertinent policy statements issued by the Sentencing Commission." *Id.* § 3583(d)(3). As discussed *supra*, the district court properly

considered the § 3553 sentencing factors when it accounted for Defendant's history as a repeat sex offender in the crime of child pornography, his pedophilia diagnosis, and the massive amount of CSAM recovered from his personal devices, as well as the need to deter future criminal conduct and provide Defendant with correctional treatment. The "sex offender assessment, treatment, and polygraphs" prescribed by Special Condition Number 1 are all reasonably related to these factors. Order, R. 208, Page ID #1027.

The district court also determined that Special Condition Number 1 involved no greater liberty deprivation than necessary to fulfill those purposes set forth under § 3553. We agree, given Defendant's repeat offenses in child pornography and the need to protect the public, and are persuaded by defense counsel's own acknowledgement that Defendant developed "a good relationship and a good rapport" with Smith, who was "convenient" for Defendant to see, and worked "right next door" to his place of employment. Hearing Tr., R. 212, Page ID #1217. In his appellate brief, Defendant distinguishes between the terms "treatment" and "monitoring" in an attempt to argue that the Condition subjects him to constant surveillance by Smith as opposed to traditional therapy, but the district court's order does not indicate that Smith would monitor or supervise Defendant in lieu of the probation officer. Appellant Br., ECF No. 11, 28–29. Rather, the Condition allows for Smith to "communicate" with the probation officer about Defendant's progress throughout the course of his mandated sex offender assessment, treatment, and polygraphs. Order, R. 208, Page ID #1027–28; Hearing Tr., R. 212, Page ID #1209 (noting that Special Condition Number 1 is "helpful, both as a supervision tool and can be helpful to [Defendant] in avoiding additional issues that he doesn't want to have, even if it wouldn't necessarily be therapeutic in the classic sense").

The district court's language is also consistent with the Sentencing Commission's policy statements and guidelines. The court clearly defined "treatment" to mean "monitoring a defendant in furtherance of the recognized objectives of supervised release," Order, R. 208, Page ID #1029–30, which fully comports with policy statements encouraging courts to impose conditions "for the treatment and monitoring of sex offenders." *See* U.S.S.G. § 5D1.3(d)(7). Additionally, courts may impose special conditions of correctional treatment "in the most effective manner," 18 U.S.C. § 3553(a)(2)(D), and Defendant has not offered any explanation as to why sex offender treatment with Smith as his provider, through Special Condition Number 1, would not be effective at treating his perversions, nor has he shown the existence of a more effective alternative. *See United States v. Barcus*, 892 F.3d 228, 237 (6th Cir. 2018). Accordingly, the district court did not exceed its authority by requiring Defendant to participate in a sex offender treatment program with Kevin Smith pursuant to Special Condition Number 1.

### C. Payment for Sex Offender Treatment

Finally, Defendant argues that he should not be required to "pay for" provider Smith's services under Special Condition Number 1. Appellant Br., ECF No. 11, 27. But because Defendant did not object to this payment requirement before the district court, we review it for plain error. *United States v. Vonner*, 516 F.3d 382, 385 (6th Cir. 2008) (en banc) ("A party who neglects to make an objection, . . . forfeits the argument and may obtain relief on appeal only if the error is 'plain' and 'affects substantial rights.'" (citation omitted)). Defendant does not come close to meeting this difficult burden, and in any event, his claim is foreclosed by the precedent of this Court.

In *Carpenter*, we upheld a special condition requiring the defendant to "pay a portion of the cost [of a treatment program] according to his ability." 702 F.3d at 884; *see also United States*

*v. Stoterau*, 524 F.3d 988, 1007 (9th Cir. 2008) (concluding that the district court did not plainly err by requiring the defendant to contribute to the cost of a sex offender treatment program). We upheld a similar special condition in *United States v. Logins* that required the defendant to "pay at least a portion of the cost" of his treatment. *See* 503 F. App'x 345, 347 (6th Cir. 2012). Likewise, Special Condition Number 1 does not render Defendant responsible for the full cost of his sex offender treatment and explicitly states that he need only "contribute." Order, R. 208, Page ID #1028. The record nowhere suggests that Defendant is financially incapable of contributing to these costs, especially with the U.S. Probation Office contracting to pay for his weekly treatments with Smith, a development which defense counsel described as a "breakthrough." Hearing Tr., R. 212, Page ID #1215–17.

Moreover, the record proves that Defendant *agreed* to "contribute to the cost [associated with Special Condition Number 1] as determined by the U.S. Probation Office" in advance of filing his position with the court. Gov't's Position, R. 207, Page ID #1015 (utilizing black and red text to indicate points of agreement and disagreement between the parties, respectively). The *only* difference between the parties' agreed-upon language and the court's finalized version of Special Condition Number 1 is that the former did not specify that Defendant contribute to the cost of "sex offender assessment, treatment, and polygraphs," and rather left the payment requirement more open-ended, which could arguably be applied even more broadly. Order, R. 208, Page ID #1028. Thus, the district court did not commit plain error by requiring Defendant to contribute to the cost of his own sex offender treatment.

## III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.