RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0061P (6th Cir.)
File Name: 04a0061p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

MARION MONTEZ,
Administratrix of the Estate of
Tracy Hearlson,
    *Plaintiff-Appellant,*

    *v.*

UNITED STATES OF AMERICA,
    *Defendant-Appellee.*

No. 02-6303

———————

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 99-00348—Joseph M. Hood, District Judge.

Argued: February 5, 2004

Decided and Filed: February 26, 2004

Before: NELSON, GILMAN, and ROGERS, Circuit
Judges.

———————

## COUNSEL

**ARGUED:** T. Bruce Simpson, Jr., ANGGELIS &
GORDON, Lexington, Kentucky, for Appellant. Thomas Lee
Gentry, ASSISTANT UNITED STATES ATTORNEY,

Lexington, Kentucky, for Appellee. **ON BRIEF:** T. Bruce
Simpson, Jr., ANGGELIS & GORDON, Lexington,
Kentucky, for Appellant. Thomas Lee Gentry, Mason Moore
Kessinger, ASSISTANT UNITED STATES ATTORNEYS,
Lexington, Kentucky, for Appellee.

  GILMAN, J., delivered the opinion of the court, in which
NELSON, J., joined. ROGERS, J. (p. 13), delivered a
separate concurring opinion.

———————

## OPINION

———————

  RONALD LEE GILMAN, Circuit Judge. A corrections
officer at the Federal Medical Center prison in Lexington,
Kentucky (FMC Lexington), found inmate Tracy Hearlson
dead in a housing unit of the prison during the early morning
hours of September 14, 1998. Hearlson had been beaten to
death with a fire extinguisher. No alarm sounded, and prison
officials were unaware of the assault until the corrections
officer discovered Hearlson's body. Two of Hearlson's
fellow inmates were subsequently convicted of his murder.
Marion Montez, who is both Hearlson's mother and the
administratrix of his estate, brought suit against the United
States pursuant to the Federal Tort Claims Act (FTCA). Her
complaint alleged that the government was responsible for
Hearlson's death because prison officials had negligently
failed to adequately protect him. The district court granted
the government's motion to dismiss on the ground that the
prison officials' decisions regarding Hearlson's safety fell
within the discretionary function exception to the FTCA. For
the reasons set forth below, we **AFFIRM** the judgment of the
district court.

## I. BACKGROUND

Montez's complaint alleges in pertinent part that

(1) Hearlson was an inmate at FMC Lexington who was killed on or about September 14, 1999;

(2) The prison warden, other officials, and employees of FMC Lexington were acting within the scope of their employment at all relevant times;

(3) Hearlson's murder was the "direct and proximate result of the negligence" of these persons;

(4) Because Hearlson was "in protective lock-up prior to the attack, employees and officials of the Defendant knew or should have known that Tracy Hearlson was in imminent danger of likely injury of substantial certainty and consciously and knowingly failed to afford him reasonable protection."

(5) Prison officials placed Hearlson in a facility that they "knew or reasonably should have known was so inadequate that Tracy Hearlson could not be adequately protected from the risk of assaults by fellow prisoners."

(6) The officials "were required to use ordinary care in determining whether a federal prisoner should be kept in a particular facility and in determining where within that particular facility the prisoner should be kept, and the Governmental functions performed in these areas are not 'discretionary functions' with[] respect to which the United States is immune from Tort Liability."

Hearlson was beaten to death with a fire extinguisher in an unsupervised area of FMC Lexington where inmates watch television. No prison official was aware of the assault. But the prison was aware of Hearlson's prior altercations with other inmates, and had previously put Hearlson in protective lock-up. No official, however, had knowledge of any

specific, imminent threat to Hearlson. In fact, Hearlson had concurred in the decision by prison officials to release him back into Commonwealth South, a housing unit at FMC Lexington designed for inmates with mental health problems or other special needs, approximately one month before the fatal assault.

After Montez filed the complaint, the United States filed a motion to dismiss or, in the alternative, for summary judgment. The district court granted the motion, reasoning that "the decision as to what level of protection within the institution to be afforded Hearlson was a discretionary act by Bureau of Prisons officials not subject to the FTCA." This timely appeal followed.

## II. ANALYSIS

The only issue in this case is a purely legal one: Did the district court properly grant the motion to dismiss on the basis that the decisions of prison officials regarding Tracy Hearlson's safety fall within the discretionary function exception to the FTCA, thereby depriving the district court of subject matter jurisdiction? "This court reviews de novo a district court's grant of a motion to dismiss on the basis of subject-matter jurisdiction." *Pieper v. Am. Arbitration Ass'n, Inc.*, 336 F.3d 458, 460 (6th Cir. 2003).

Analysis of this issue starts with the fundamental principle that the United States government may not be sued without its consent. *United States v. Orleans*, 425 U.S. 807, 814 (1976) (observing that "the United States can be sued only to the extent that it has waived its immunity"). Pursuant to the FTCA, the United States has consented, subject to certain exceptions, to suit for damages for personal injuries caused by the negligence of government employees acting within the course and scope of their employment. *See* 28 U.S.C. §§ 1346(b), 2671-2680.

A significant limitation on the scope of the FTCA's waiver of sovereign immunity is the discretionary function exception, 28 U.S.C. § 2680(a), which provides that the United States has not consented to suit where the claim is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." Because the United States has not waived its sovereign immunity with respect to discretionary functions, courts lack subject matter jurisdiction over acts falling within the discretionary function exception. *Rosebush v. United States*, 119 F.3d 438, 440 (6th Cir. 1997).

The United States Supreme Court has formulated a two-part test to determine whether a governmental act falls within the exception. First, a court must ask whether the act involves "an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quotation marks omitted) (holding that federal regulators' supervision of a savings and loan association's day-to-day operations was within the discretionary function exception). If the answer to that question is "yes," then the court must ask "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322-23 (quotation marks omitted). Each of these elements is discussed in turn below.

### A. *Did the prison officials' decisions regarding Hearlson's safety involve an element of judgment or choice?*

The Supreme Court has stated that "the discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." *Berkovitz v. United States*, 486 U.S. 531, 536 (1988) (holding that the discretionary function exception did not apply where the complaint alleged that the FDA failed to follow a prescribed course of conduct when approving a polio vaccine). In the present case, Montez

contends that both a statute (18 U.S.C. § 4042(a)) and a federal regulation (28 C.F.R. § 541.10) mandated a course of conduct for prison officials to follow in making decisions regarding Hearlson's safety.

The statute provides in pertinent part as follows:

> The Bureau of Prisons, under the direction of the Attorney General, shall—
> (1) have charge of the management and regulation of all Federal penal and correctional institutions;
> (2) provide suitable quarters and *provide for the safekeeping*, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise;
> (3) *provide for the protection*, instruction, and discipline of all persons charged with or convicted of offenses against the United States.

18 U.S.C. § 4042(a) (emphasis added).

The statute imposes a mandatory duty upon the Bureau of Prisons (BOP) through the use of the word "shall." *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) (holding that § 4042(a) "sets forth a mandatory duty of care"). But the duty imposed by § 4042(a) is of a general nature, broadly requiring that the BOP "provide for the safekeeping" and "provide for the protection" of federal inmates. BOP officials are given no guidance, and thus have discretion, in deciding how to accomplish these objectives.

The two other circuits that have previously considered this issue have both decided that § 4042(a) does not specifically prescribe a course of action for prison officials to follow. *See Cohen v. United States*, 151 F.3d 1338, 1342 (11th Cir. 1998) ("[E]ven if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion

in the means it may use to fulfill that duty to trigger the discretionary function exception."); *Calderon*, 123 F.3d at 950 ("While it is true that this statute sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates."). We believe that *Cohen* and *Calderon* are persuasive on this point, and we therefore adopt their conclusion.

But Montez also contends that BOP officials lack discretion because of federal regulation 28 C.F.R. § 541.10, which provides in pertinent part as follows:

(b) The following *general principles* shall apply in every disciplinary action taken:
. . .
(2) Staff shall take disciplinary action at such times and to the degree necessary to regulate an inmate's behavior within Bureau rules and institution guidelines and to promote a safe and orderly institution environment.

(Emphasis added.)

This regulation, much like 18 U.S.C. § 4042(a), sets forth the general objectives of "regulat[ing] inmate behavior" and "promot[ing] a safe and orderly institution environment," but does not mandate any specific course of action on the part of BOP officials. Moreover, the phrases "at such times" and "to the degree necessary" clearly allow prison officials discretion to decide when disciplinary action is necessary.

In *Calderon*, the Seventh Circuit held that § 541.10 creates no mandatory, nondiscretionary duty on the part of BOP officials. 123 F.3d at 949. *Calderon*'s conclusion is consistent with the language of the regulation, and we likewise conclude that § 541.10 does not prescribe a specific course of action that BOP officials must follow.

In addition to the regulation cited by Montez, the United States cites two additional regulations that govern the actions of prison officials. One states that an inmate "may" be removed from the general population for safety reasons. 28 C.F.R. § 541.22(a). Another provides that BOP staff "may consider . . . as protection cases" inmates who are in danger. 28 C.F.R. § 541.23(a). The use of the word "may" in these regulations, rather than "shall," demonstrates that their implementation is left to the discretion of BOP officials. *See Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998) (holding that "the use of the term 'may' in the regulations imports discretion"); *see also Dorris v. Absher*, 179 F.3d 420, 429 (6th Cir. 1999) ("The use of the term 'may' in a statute is generally construed as permissive rather than as mandatory."). Because these regulations contain no mandatory language, we agree with *Dykstra*'s conclusion that they do not impose a mandatory, nondiscretionary duty upon BOP officials.

In sum, the relevant statute and regulations allowed BOP officials to exercise judgment when making decisions regarding Hearlson's safety. Under the Supreme Court's two-factor approach, we must next consider "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23 (quotation marks omitted).

**B.**   ***Were the prison officials' decisions regarding Hearlson's safety of the kind that the discretionary function exception was meant to shield?***

Where the relevant governmental policy allows discretion, the Supreme Court has explicitly stated what a plaintiff must do to survive a motion to dismiss:

When established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must

be presumed that the agent's acts are grounded in policy when exercising that discretion. For a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime. The focus of the inquiry is not on the agent's subjective intent in exercising the discretion conferred by statute or regulation, but on the nature of the actions taken and on whether they are susceptible to policy analysis.

*Id.* at 324-25. In the present case, therefore, we must decide whether Montez's complaint alleges facts sufficient to rebut the presumption that the decisions by the prison officials regarding Hearlson's safety were "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23 (quotation marks omitted) (the *Gaubert* presumption).

Two other circuits have acknowledged the *Gaubert* presumption in affirming the grant of motions to dismiss in cases brought by injured prisoners. In *Calderon*, the Seventh Circuit affirmed the grant of a motion to dismiss because the plaintiff inmate had failed to allege in his complaint facts that "would support a finding that the BOP's [decision] not to take disciplinary action against [the inmate who later attacked the plaintiff] was based on grounds other than considerations of public policy." 123 F.3d at 950. Similarly, the Eighth Circuit in *Dykstra* held that the discretionary function exception barred a suit against the BOP by an inmate who was sexually assaulted by another inmate. Dykstra claimed that certain prison officials were negligent in not informing him that his youthful appearance placed him at a higher risk of sexual assault and for not taking action after Dykstra informed a guard that another inmate had been staring at him. 140 F.3d at 795. But Dykstra's complaint was found deficient because it failed to allege facts establishing that prison officials' decisions regarding these issues were not based on policy considerations. *Id.* at 796. The Eighth Circuit therefore

affirmed the district court's decision to grant the BOP's motion to dismiss.

As a general principle, a complaint that alleges the existence of a specific and immediate threat against an inmate is more likely to survive a motion to dismiss than a complaint that either alleges a nonspecific threat or provides only conclusory statements regarding the existence of a threat. This follows from the fact that decisions by prison officials to ignore specific and immediate threats against inmates are less likely to be the type of decision that can be said to be grounded in the underlying policy of the BOP, which requires prison officials to provide for the safekeeping and protection of inmates. *See* 18 U.S.C. § 4042(a). In light of this general principle, we regard *Dykstra* as a close case because the prison officials apparently knew that Dykstra was at a higher risk of sexual assault and that the inmate who eventually attacked Dykstra had been staring at him. 140 F.3d at 795.

We have been unable to find any post-*Gaubert* case that illustrates a situation where an injured prisoner's complaint is unquestionably adequate to survive a motion to dismiss, but one useful factual situation comes from the Supreme Court's decision in *United States v. Muniz*, 374 U.S. 150, 152 (1963), where a prison guard stood by while an inmate was chased and severely beaten by 12 other inmates. Although the *Muniz* Court did not decide whether the discretionary function exception applied, a complaint alleging the facts set forth in *Muniz* would be adequate, in our opinion, to survive a motion to dismiss because a guard's conscious decision not to protect an inmate from a specific and immediate attack cannot "be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 325.

In the present case, only three allegations in the complaint directly focus on the basis for prison officials' decisions regarding Hearlson's safety. The complaint first alleges that because Hearlson was "in protective lock-up prior to the attack, employees and officials of the Defendant knew or

should have known that Tracy Hearlson was in imminent danger of likely injury of substantial certainty and consciously and knowingly failed to afford him reasonable protection." But the sentence provides insufficient support for its conclusory allegations. The sole fact Hearlson was "in protective lock-up prior to the attack" does not demonstrate the existence of a specific and immediate threat against Hearlson that was still present after he was released from protective lock-up a month earlier. That Hearlson had previously been in protective lock-up is simply insufficient to rebut the presumption that the prison officials' decisions regarding Hearlson's safety at the time of his death were of the type that can be said to be grounded in BOP policy.

The complaint next alleges that the prison officials placed Hearlson in a facility that they "knew or reasonably should have known was so inadequate that Tracy Hearlson could not be adequately protected from the risk of assaults by fellow prisoners." This allegation, however, simply alleges that the BOP officials were negligent in making a decision—to place Hearlson in the Commonwealth South housing area—without addressing the nature of that decision, and therefore does not satisfy *Gaubert*'s requirement that a complaint "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." *Gaubert*, 499 U.S. at 324-25.

Finally, the complaint alleges that the prison officials "were required to use ordinary care in determining whether a federal prisoner should be kept in a particular facility and in determining where within that particular facility the prisoner should be kept, and the Governmental functions performed in these areas are not 'discretionary functions' with[] respect to which the United States is immune from Tort Liability." This is nothing more than a bare assertion that the discretionary function exception does not apply, and it clearly does not satisfy *Gaubert*'s requirement of a factual assertion sufficient to rebut the presumption that the prison officials' decisions

were of the type that can be said to be grounded in BOP policy.

In conclusion, the relevant statute and regulations do not prescribe a mandatory course of conduct for prison officials to follow when making decisions regarding inmates' safety. Montez's complaint, moreover, fails to rebut the *Gaubert* presumption that the decisions by prison officials regarding his safety were based upon BOP policy. We therefore conclude that the discretionary function exception shields the United States from liability in this case, and that the district court properly granted the government's motion to dismiss for lack of subject matter jurisdiction.

### III. CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

**CONCURRENCE**

---

ROGERS, Circuit Judge, concurring.   I concur in the majority's judgment and almost totally in its reasoning.  My one reservation concerns the first complaint allegation discussed by the majority: that because of Hearlson's previous stint in protective custody, BOP officials knew or should have known that Hearlson was in danger and failed to provide him reasonable protection.    With respect, the issue for discretionary function exception purposes is not whether there is sufficient support for the allegation, nor is the issue the specificity or immediacy of the threat.  Instead, the relevant question is whether the ongoing determination of where Hearlson would be placed was the type of agency decision-making that takes broad agency policies into account.  In short, the relevant inquiry is the nature of the decision-making process, not the nature of the threat.  I agree, however, that there is nothing about this allegation that rebuts the presumption that the prison officials' decisions regarding Hearlson's safety were the type of decision that is grounded in policy.