RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0220p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

L. C.,

*Plaintiff-Appellant*,

> No. 22-6105

*v.*

UNITED STATES OF AMERICA,

*Defendant-Appellee*.

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:21-cv-00124—Gregory F. Van Tatenhove, District Judge.

Argued:  July 26, 2023

Decided and Filed:  September 28, 2023

Before:  MOORE, GIBBONS, and BUSH, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:**  Anthony I. Werner, JOHN & WERNER LAW OFFICES, PLLC, Wheeling, West Virginia, for Appellant.  Leif Overvold, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Anthony I. Werner, JOHN & WERNER LAW OFFICES, PLLC, Wheeling, West Virginia, David G. Bryant, DAVID BRYANT LAW, PLLC, Louisville, Kentucky, for Appellant.  Leif Overvold, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

───────────────

## OPINION

───────────────

KAREN NELSON MOORE, Circuit Judge.  While L. C. was incarcerated at Federal Medical Center, Lexington ("FMC") in Lexington, Kentucky, she was repeatedly sexually

assaulted by Bureau of Prisons ("BOP") employee Hosea Lee.  L. C. alleges that the BOP knew or should have known of Lee's assaults on her and other incarcerated women.  She claims that the BOP failed to enforce its zero-tolerance policy for sexual assault in BOP facilities because BOP officials failed timely to report and investigate Lee's assaults.  Accordingly, L. C. filed a negligence claim against the United States under the Federal Tort Claims Act ("FTCA").  Because a BOP policy imposes specific and mandatory directives on all BOP officials timely to report and investigate information pertaining to sexual assault by a BOP official, and because deciding whether to do so is not susceptible to policy considerations, this type of negligence claim falls outside the scope of the discretionary-function exception to the FTCA.  But because L. C.'s specific allegations fail to state a plausible claim upon which relief can be granted, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

Plaintiff L. C. is incarcerated in a federal prison and within the custody of the BOP.  R. 1 (Compl. ¶¶ 1, 69) (Page ID #1, 12).  The BOP transferred L. C. to FMC in Lexington, Kentucky.  *Id.* ¶ 23 (Page ID #6).  At FMC, Plaintiff needed to complete Aftercare, a required component of her Residential Drug Abuse Program ("RDAP").  *Id.* ¶¶ 24, 25 (Page ID #6).  Successfully completing Aftercare, and thus RDAP, affords a person the opportunity to seek, among other benefits, "early release; money; preferred living quarters; special recognition privileges; personal property allowances; photographs of an RDAP completion ceremony sent to her family members; and a nearer-release transfer."  *Id.* ¶ 29 (Page ID #6–7).  Failing to complete RDAP risks

> ineligibility for a reduced sentence; revocation of any prior incentives given (e.g. money); transfer back to prior institution; extended length of community confinement; ineligibility for a furlough (other than possibly an emergency furlough); ineligibility for performance pay above maintenance pay level, bonus pay, or vacation pay; ineligibility for the Federal Prison Industries work program assignment; and an increased risk of harm and retaliation in her current institution for 'causing trouble' and angering an RDAP teacher.

*Id.* ¶ 30 (Page ID #7).

L. C. alleges that her RDAP instructor at FMC, Defendant Hosea Lee, repeatedly sexually assaulted and sexually harassed her. *Id.* ¶¶ 3, 32–53 (Page ID #2, 7–10).  Lee's attacks began when L. C. started her Aftercare course in August 2019.  *Id.* ¶ 32 (Page ID #7).  L. C. alleges that Lee "sexualized the questions" that he publicly asked her, *id.* ¶ 33 (Page ID #7), and sexually harassed her outside of class, *id.* ¶ 34 (Page ID #8).  Then, around August 20, 2019, Lee sexually assaulted L. C.  *Id.* ¶¶ 35–41 (Page ID #8).  According to L. C., another incarcerated individual told L. C. that Lee wanted to see her.  *Id.* ¶ 35 (Page ID #8).  When L. C. arrived, Lee "ordered L. C. into the closet in his office and raped her vaginally without a condom." *Id.* ¶ 40 (Page ID #8).  Lee ordered L. C. to return the following week.  *Id.* ¶ 41 (Page ID #8). "Several days later, L. C. discovered a rash on her vagina, which then turned into [ ] several sores."  *Id.* ¶ 42 (Page ID #8).  L. C. did not initially seek medical treatment, fearing that "it would get back to Lee and get her in trouble."  *Id.* ¶ 43 (Page ID #8).  Months later, on February 18, 2020, L. C. tested positive for oral and genital Herpes.  *Id.* ¶ 44 (Page ID #9).

Following Lee's orders, L. C. returned to Lee's office, and Lee again assaulted her. *Id.* ¶¶ 46–47 (Page ID #9).  Lee then ordered L. C. "to return to his office on alternating Tuesdays and Thursdays every two weeks."  *Id.* ¶ 48 (Page ID #9).  "Lee raped L. C. at least three times vaginally and, additionally, forced her to perform oral sex upon him at least two times" in his office closet.  *Id.* ¶ 49 (Page ID #9).  Additionally, L. C. alleges that "Lee would occasionally pull L. C. around a corner and 'make out' with her.  He also rubbed himself against her for his sexual gratification as if having sex with her."  *Id.* ¶ 51 (Page ID #9).  L. C.'s Complaint does not identify when Lee stopped assaulting her.  L. C.'s administrative complaints identified two dates: September 3, 2019, R. 28-2 (Aug. 28, 2020 SF 95) (Page ID #222) and October 3, 2019, R. 28-1 (Mar. 10, 2020 SF 95) (Page ID #186).[1]

---

[1]In the district court's Federal Rule of Civil Procedure 12(b)(6) analysis, it treated a number of exhibits attached to the United States's motion to dismiss (R. 28-1 through R. 28-5) as part of the pleadings. *L. C. v. United States*, No. 5:21-cv-00124-GFVT, 2022 WL 1179400, at *9 n.5 (E.D. Ky. Apr. 19, 2022).  L. C. does not challenge that determination on appeal.  We therefore consider the evidence where necessary and accept L. C.'s allegations as true unless an allegation is directly contradicted by the United States's exhibits. *See Clark v. Stone*, 998 F.3d 287, 298 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 773 (2022).

The United States asserted in its motion to dismiss that it "first learned" of Lee's sexual assaults when two other incarcerated people independently reported Lee on November 22, 2019: one reported "that Lee made inappropriate sexual comments towards her," and another reported that "Lee was supposedly exchanging cigarettes for sexual favors with inmates." R. 26 (USA's Mot. to Dismiss at 2) (Page ID #160); *see also* R. 28-3 (Nov. 22, 2019 Referral of Incident Report) (Page ID #228); R. 28-3 (Employee's Mem.) (Page ID #237). One of the reports identified L. C. as one of Lee's victims. R. 28-3 (Employee's Mem.) (Page ID #237). L. C., however, contends that the BOP knew or should have known of Lee's attacks on women earlier. She alleges that "[u]pon information and belief, prior to and during Defendant Lee's sexual assaults upon Plaintiff, BOP personnel, not only at FMC Lexington but at other prison facilities, knew or should have known of Defendant Lee's propensity for sexual misconduct involving inmates." R. 1 (Compl. ¶ 63) (Page ID #11).

As part of the investigation, BOP officials interviewed L. C. on November 25, 2019; L. C. did not then disclose Lee's attacks. *Id.* ¶ 54 (Page ID #10); R. 28-3 (L. C. Nov. 25, 2019 Aff.) (Page ID #239–40). That same day, the BOP informed Lee of the allegations against him and barred Lee from FMC "[w]hile the matter is being reviewed," but kept his schedule the same. R. 28-3 (Post Change Mem.) (Page ID #235). On January 15, 2020, Lee resigned.[2] R. 28-2 (BOP Resp. to Admin Claim at 2) (Page ID #225). Shortly thereafter, L. C., who had been temporarily transferred to another facility because of drug use in December 2019, disclosed Lee's attacks during another interview with investigators. R. 1 (Compl. ¶¶ 55–57) (Page ID #10); R. 28-2 (BOP Resp. to Admin Claim at 2) (Page ID #225).

On February 18, 2020, L. C. returned to FMC. R. 1 (Compl. ¶¶ 44, 58–59) (Page ID #9-10); R. 28-2 (BOP Resp. to Admin Claim at 2) (Page ID #225). That day, a medical official diagnosed L. C. with "oral herpes (HSV I) and genital herpes (HSV II)." R. 1 (Compl. ¶¶ 44, 58–59) (Page ID #9, 10). While she received treatment, a BOP employee in the FMC medical department, Mr. Higgins, told L. C. that all of Lee's victims had contracted herpes. *Id.* ¶ 60

---

[2]Lee eventually pleaded guilty to and was convicted of five counts of sexual abuse of an individual in federal custody in violation of 18 U.S.C. § 2243(b) and was sentenced to eighty months of imprisonment. Criminal J. at 1–2, *United States v. Lee*, No. 5:21-cr-00084-DCR-MAS-1 (E.D. Ky. Sept. 26, 2022), ECF No. 68 (Page ID #271–72).

(Page ID #10).  According to L. C., other BOP officials also made comments about Lee's history of attacking women.  For instance, L. C. alleges that a BOP counselor, Ms. Chaney, told L. C. that Lee had been reported "a long time ago." *Id.* ¶ 65 (Page ID #11).  L. C.'s Complaint does not identify when Chaney made this statement. *See id.*

L. C. filed an administrative complaint, which the BOP denied on February 26, 2021.  R. 28-2 (BOP Resp. to Admin Claim at 3) (Page ID #226).  The BOP's denial letter stated that "[a]s soon as FMC Lexington" officials learned of Lee's assaults, they took actions to separate him from L. C. *Id.*  It further stated that before "November 25, 2019, FMC Lexington officials were unaware of sexual misconduct by [Lee], as it had not been reported, nor did FMC Lexington staff have prior knowledge of [Lee]'s action and/or alleged pattern of conduct." *Id.*  It concluded that the BOP had properly followed the relevant guidelines and had not acted in a negligent manner. *Id.*

L. C. then filed this action in the U.S. District Court for Eastern District of Kentucky against Lee and the United States.[3]  L. C. brought an assault-and-battery claim and a negligence claim against the United States under the FTCA.  R. 1 (Compl. ¶¶ 89–111) (Page ID #13–17).  Relevant to this appeal, the negligence claim addressed the BOP's duty to provide those whom it incarcerates with a safe environment by enforcing a policy of a zero tolerance of sexual assault by BOP officials and in BOP facilities. *Id.* ¶¶ 95–111 (Page ID #14–17).  Underlying the allegations that the BOP failed to enforce its zero-tolerance policy are allegations that BOP officials failed timely to report and investigate information pertaining to Lee's sexual harassment and assault of L. C. and other incarcerated women. *Id.* ¶¶ 63–67, 101, 108–09 (Page ID #11, 15, 17); *see also id.* ¶¶ 13–22 (Page ID #3–6) (discussing the reporting and investigation requirements in the BOP Program Statement 5324.12).

The United States moved to dismiss L. C.'s claims.  R. 26 (USA's Mot. to Dismiss) (Page ID #159–74).  It argued for dismissal under Federal Rule of Civil Procedure 12(b)(1), contending a lack of subject-matter jurisdiction. *Id.* at 4–14 (Page ID #162–72).  It urged

---

[3]This appeal concerns L. C.'s negligence claim against the United States, and not her claim against Lee himself. *See* R. 52 (Notice of Appeal) (Page ID #476).

dismissal of the assault-and-battery claim "because Lee's alleged acts were not committed in furtherance of the United States' business of safely housing inmates." *Id.* at 4 (Page ID #162). The United States argued that L. C.'s "negligent confinement claim," *id.* at 10 (Page ID #168), failed under the discretionary-function exception. It further argued that L. C.'s "negligent confinement claim" failed under Rule 12(b)(6) because she had not sufficiently alleged a breach of the BOP's duty. *Id.* at 14 (Page ID #172). L. C. opposed the motion. R. 29 (Pl.'s Opp'n) (Page ID #264–86). L. C., however, did not seek jurisdictional discovery from the district court. *See generally id.*

The district court granted the United States's motion. *L. C. v. United States*, No. 5:21-cv-00124-GFVT, 2022 WL 1179400 (E.D. Ky. Apr. 19, 2022). The district court dismissed the assault-and-battery claim because it concluded that the FTCA's exception to sovereign immunity does not apply to torts committed by federal employees who act beyond the scope of their employment. *Id.* at *4. It dismissed her negligence claim under the discretionary-function exception to the FTCA. *Id.* at *8. It determined that, in the alternative, the negligence claim should be dismissed under Rule 12(b)(6) because L. C.'s Complaint failed to allege sufficiently that the BOP knew or should have known of Lee's attacks. *Id.* at *9. L. C. appeals the district court's ruling regarding her negligence claim only. Appellant Br. at 10.

## II.  THE DISCRETIONARY-FUNCTION EXCEPTION

The FTCA provides an exception to sovereign immunity's bar on claims against the United States. *Kohl v. United States*, 699 F.3d 935, 939 (6th Cir. 2012). Through the FTCA, Congress waived immunity for certain tort claims. *Id.* Accordingly, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674. There are numerous statutory exceptions to the FTCA's limited waiver of sovereign immunity; when an exception to the FTCA applies, the United States cannot be sued for tort liability and federal courts lack subject-matter jurisdiction over the action. *Id.* § 2680; *Milligan v. United States*, 670 F.3d 686, 692 (6th Cir. 2012). The parties dispute whether one of these exceptions—the discretionary-function exception—applies. 28 U.S.C. § 2680(a).

## A. THE STANDARD OF REVIEW

The district court incorrectly concluded that any assertion of sovereign immunity amounts to a factual attack on jurisdiction. *L. C.*, 2022 WL 1179400, at *2. Motions to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) either *facially* or *factually* attack jurisdiction. 5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1350 (3d ed. Apr. 2023 Update). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014). It "challenges subject matter jurisdiction without disputing the facts alleged in the complaint and requires the court to treat the allegations of the complaint as true." WRIGHT & MILLER, *supra* § 1350; *see also Cartwright*, 751 F.3d at 759. A factual attack, on the other hand "challenges the factual existence of subject matter jurisdiction." *Cartwright*, 751 F.3d at 759; *see also* WRIGHT & MILLER, *supra* § 1350. It "attacks the factual allegations underlying the assertion of jurisdiction, either through the filing of an answer or otherwise presenting competing facts." WRIGHT & MILLER, *supra* § 1350. When adjudicating

> a factual attack, a court has broad discretion with respect to what evidence[4] to consider in deciding whether subject matter jurisdiction exists, including evidence outside of the pleadings, and has the power to weigh the evidence and determine the effect of that evidence on the court's authority to hear the case.

*Cartwright*, 751 F.3d at 759–60; *see also Adkisson v. Jacobs Eng'g Grp., Inc.*, 790 F.3d 641, 647 (6th Cir. 2015). The United States can bring either type of attack when challenging jurisdiction under the FTCA. *See, e.g.*, *Mynatt v. United States*, 45 F.4th 889, 894 n.2 (6th Cir. 2022) (considering the discretionary-function exception and rejecting the district court's characterization "that it evaluated the government's motion to dismiss as" a factual attack because "the district court did not make any factual findings deciding the jurisdictional challenge, which means the facial-attack standard applies"); *Kohl*, 699 F.3d at 939 n.1 (treating a motion to dismiss that raised the discretionary-function exception as a facial attack because "the district court made essentially no factual findings in deciding" the jurisdictional issue).

---

[4]When "the court takes evidence for a limited purpose of ruling on jurisdiction, the preclusive effect of such findings is limited to the issue decided." *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)).

We review de novo a district court's decision to dismiss claims under the FTCA's discretionary-function exception. *Cartwright*, 751 F.3d at 760. When presented with a factual attack, we review de novo "the district court's application of the law to the facts," but we review the district court's factual findings with regards to the jurisdictional question for clear error. *Id.* Here, the United States "present[ed] a *facial* attack under Rule 12(b)(1) to Plaintiff's argument." R. 26 (USA's Mot. to Dismiss at 4) (Page ID #162) (emphasis added). It continued to describe its motion as a facial attack on jurisdiction and told us to treat it as such at oral argument. Oral Arg. at 14:52–15:08, 23:02–24:08. Thus, treating its attack as facial, we review de novo the discretionary-function question. *Mynatt*, 45 F.4th at 894 n.2; *Cartwright*, 751 F.3d at 760.

## B. WHETHER THE DISCRETIONARY-FUNCTION EXCEPTION APPLIES TO CLAIMS OF FAILURE TO REPORT OR INVESTIGATE

Because the FTCA's exceptions limit our jurisdiction, "a plaintiff can invoke jurisdiction only if the complaint is facially outside the exceptions of § 2680." *Carlyle v. U.S. Dep't of the Army*, 674 F.2d 554, 556 (6th Cir. 1982). Thus, once a plaintiff meets their burden and "successfully invoke[s] jurisdiction by a pleading that facially alleges matters not excepted by § 2680 . . . the burden fall[s] on the government to prove the applicability of a specific provision of § 2680." *Id.* The discretionary-function exception exempts the United States from liability for

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a).

We apply a two-part test to determine whether the discretionary-function exception applies. *Milligan*, 670 F.3d at 693. First, the challenged government action must have been discretionary; it must "involv[e] an element of judgment or choice." *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (alteration in original) (quoting *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)). "The requirement of judgment or choice is not satisfied if a federal statute,

regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee had no rightful option but to adhere to the directive." *Milligan*, 670 F.3d at 693 (quoting *Rosebush v. United States*, 119 F.3d 438, 441 (6th Cir. 1997)). Government actions are not discretionary when "they [are] . . . controlled by mandatory statutes or regulations." *Gaubert*, 499 U.S. at 328.

Where discretionary conduct exists, we turn to the second prong and ask "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Id.* at 322–23 (quoting *Berkovitz*, 486 U.S. at 536). "The proper inquiry is whether the challenged actions are 'susceptible to policy analysis,' not whether they were the result of a policy analysis." *Rosebush*, 119 F.3d at 444 (quoting *Gaubert*, 499 U.S. at 324–25). *Gaubert* explained that certain discretionary acts may still fall outside "the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." 499 U.S. at 325 n.7. It offered an example: "If one of the officials . . . drove an automobile on a mission connected with his official duties and negligently collided with another car, the exception would not apply" because "[a]lthough driving requires the constant exercise of discretion, the official's decisions in exercising that discretion can hardly be said to be grounded in regulatory policy." *Id.* The discretionary-function exception aims "to 'prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" *Id.* at 323 (quoting *United States v. S.A. Empresa de Viacao Aerea Rio Grandense* (*Varig Airlines*), 467 U.S. 797, 814 (1984)); *see also Sharp ex rel. Est. of Sharp v. United States*, 401 F.3d 440, 443 (6th Cir. 2005) (same). For the discretionary-function exception to apply, both prongs must be resolved in the United States's favor. *Gaubert*, 499 U.S. at 325 n.7; *Mynatt*, 45 F.4th at 897–98.

### 1. Prong One: Whether a BOP Official's Failure Timely to Report and Investigate Information Regarding Sexual Assault by a BOP Official Is a Discretionary Act

Relevant here,[5] L. C. seeks to hold the United States liable for failing to keep her safe and protect her from Lee's attacks. More specifically, however, she alleges that the BOP failed to

---

[5]L. C. voluntarily dismissed aspects of her negligence claim that focused on negligent training and supervision. *See* Appellant Br. at 2.

enforce its zero-tolerance policy because its personnel knew or should have known of Lee's attacks sooner and failed to report and investigate Lee. *See* R. 1 (Compl. ¶¶ 12–22, 63–64, 101, 103, 108–09) (Page ID #3–6, 11, 15, 17). One of the sources of federal law that L. C. included in her Complaint is BOP Program Statement 5324.12, which specifically addresses sexual harassment and abuse in federal prisons. U.S. Dep't of Justice, Fed. Bureau of Prisons Program Statement 5324.12, Sexually Abusive Behavior Prevention and Intervention Program, https://perma.cc/G2C9-BRK4 [hereinafter Program Statement 5324.12]. The BOP issued Program Statement 5324.12 pursuant to the Prison Rape Elimination Act of 2003 ("PREA"), 34 U.S.C. § 30307(a)(1), and PREA's implementing regulations, 28 C.F.R. § 115.11(a). Program Statement 5324.12 at 2.

As a threshold matter, we must address whether L. C. forfeited her argument that Program Statement 5324.12 imposed non-discretionary and mandatory directives on BOP officials timely to report and investigate information regarding sexual assault by a BOP official. Specifically, we consider whether she forfeited the argument by not thoroughly addressing Program Statement 5324.12's mandatory directives in her opening brief before this court. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) (explaining that a party forfeits an argument that it fails to raise in its opening brief before this court). Far from the typical instance of forfeiture, however, the record before us includes multiple concessions by the United States on this very point. The United States conceded that certain sections of Program Statement 5324.12 impose mandatory reporting and investigation requirements that fall outside the scope of the discretionary-function exception. R. 30 (Gov't's Reply Br. at 10 & nn.3–4, 11–12 & n.5) (Page ID #296–98). Yet, the United States still asks us to find that L. C. forfeited this argument—even though the United States forfeited its own forfeiture argument. *See United States v. Shultz*, 733 F.3d 616, 619 (6th Cir. 2013); *Mynatt*, 45 F.4th at 899 (finding that the United States forfeited its forfeiture argument in a FTCA case when it first raised the plaintiff's forfeiture at oral argument). Under these circumstances, we decline to find forfeiture by L. C.

L. C. pleaded nearly a dozen allegations regarding the BOP Program Statements and the mandatory reporting and investigatory requirements that apply when a BOP official learns of

information related to sexual assault in a BOP facility. *See* R. 1 (Compl. ¶¶ 12–22) (Page ID #3–6). Nonetheless, in its motion to dismiss, the United States argued that 18 U.S.C. § 4042(a) provided "[t]he foundation for Plaintiff's duty argument," R. 26 (USA's Mot. to Dismiss at 11) (Page ID #169), and that the statute failed to supply a mandatory directive such that "[t]he first factor of the DFE test is thus satisfied," *id.* at 12 (Page ID #170). The United States ignored L. C.'s allegations about the Program Statement's reporting and investigation requirements. In her response brief, L. C. argued that "Program Statement 5324.12 sets out a number of relevant non-discretionary duties." R. 29 (Pl.'s Resp. at 12) (Page ID #275) (listing Program Statement 5324.12's numerous nondiscretionary requirements, *id.* at 12–13 (Page ID #275–76)). The United States then in its reply directly addressed Program Statement 5324.12 and *conceded* that certain sections imposed mandatory directives that BOP officials timely report and investigate information pertaining to sexual assault. R. 30 (Gov't's Reply Br. at 10 & nn. 3–4, 11–12 & n.5) (Page ID #296–98). It recognized that "Program Statement 5324.[12]**6** . . . § 115.61(a); § 115.62; [and] § 115.71(f)(2) . . . impose some specific duties on the BOP," *id.* at 11 (Page ID #297) (citing R. 29 (Pl.'s Resp. at 13–16) (Page ID #276–79)), while "[o]ther duties in § 115.61, however, are not as clearly established and are subject to dismissal under the DFE," *id.* at 11 n.5 (Page ID #297). Perplexingly, the district court ignored the United States's explicit concession and neglected to address the Program Statements.**7** *See generally L. C.*, 2022 WL 1179400. On appeal, L. C.'s counsel did not alert us to the district court's significant error and rested too heavily on L. C.'s Complaint rather than thoroughly re-presenting the argument. *See, e.g.*, Appellant Br. at 14 (noting that L. C.'s Complaint "alleged duties grounded in the BOP policies that are publicly available" and cited to the Complaint's allegations that discuss the Program Statements). But the United States did not argue that L. C. forfeited her argument that the Program Statement imposed mandatory reporting and investigatory directives in its brief before us. Gov't Br. at 15; Oral Arg. at 26:17–30 ("We did not preemptively say that, to extent they try to raise some additional directive that they failed to raise in their opening brief, that it is forfeited."). The United States's failure to argue forfeiture is telling, given that it requested that

---

**6**A typographical error referred to this as "5324.06." There is no Program Statement 5324.06.

**7**Instead, the district court addressed 18 U.S.C. § 4042; 34 U.S.C. §§ 30302, 30307; and the regulations that implement PREA (28 C.F.R. §§ 115.11, 115.13).

we apply our forfeiture rules to another argument just pages later. Gov't Br. at 18 ("[L. C.'s] argument in this regard is consequently forfeited.").

A party that sees a forfeited argument must preemptively raise forfeiture—waiting to raise a forfeiture argument until oral argument "forfeit[s] the forfeiture." *Shultz*, 733 F.3d at 619. Addressing the merits is even more appropriate here because we know the parties' positions and we are not left guessing each party's argument. Quite the opposite, the United States has conceded that certain portions of Program Statement 5324.12 impose non-discretionary requirements on BOP officials timely to report and investigate sexual assault by BOP officials. Our forfeiture rules exist in part because we find it "inappropriate to consider" arguments raised by one party when the other party has not had the opportunity to respond to that argument. *Cf. Aetna Cas. & Sur. Co. v. Leahey Const. Co.*, 219 F.3d 519, 545 (6th Cir. 2000); *United States v. Johnson*, 186 F. App'x 560, 564 (6th Cir. 2006) ("As this case illustrates, unless both parties have an ample opportunity to present arguments, this court may receive an incomplete picture of the legal landscape."). That is not what occurred here, and therefore we will address L. C.'s argument that Program Statement 5324.12 imposes mandatory reporting and investigation requirements.

Turning to the first prong of the discretionary-function exception, we hold that BOP Program Statement 5324.12 contains non-discretionary directives requiring BOP officials timely to report and investigate information regarding sexual assault in BOP facilities. When Congress enacted PREA, codified as 34 U.S.C. §§ 30301–30309, it found that, despite the "[i]nsufficient research [that] has been conducted and [the] insufficient data reported on the extent of prison rape . . . experts have conservatively estimated that at least 13 percent of the inmates in the United States have been sexually assaulted in prison." 34 U.S.C. § 30301(2). Accordingly, Congress determined that "[u]nder this estimate, nearly 200,000 inmates now incarcerated have been or will be the victims of prison rape." *Id.* It further found that "[m]ost prison staff are not adequately trained or prepared to prevent, report, or treat inmate sexual assaults," and that "[p]rison rape often goes unreported, and inmate victims often receive inadequate treatment for the severe physical and psychological effects of sexual assault—if they receive treatment at all." *Id.* § 30301(5)–(6). Congress enacted PREA in part to "establish a zero-tolerance standard for

the incidence of prison rape in prisons in the United States" and "make the prevention of prison rape a top priority in each prison system." *Id.* § 30302(1)–(2). PREA sought to "increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape." *Id.* § 30302(6). PREA also required "the Attorney General . . . [to] publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape." *Id.* § 30307(a)(1). Accordingly, federal regulations required that "[a]n agency shall have a written policy mandating zero tolerance toward all forms of sexual abuse and sexual harassment and outlining the agency's approach to preventing, detecting, and responding to such conduct." 28 C.F.R. § 115.11(a).

On June 4, 2015, the BOP issued Program Statement 5324.12.[8] The Program Statement "provide[s] a written policy that implements zero tolerance toward all forms of sexual activity, including sexual abuse and sexual harassment, and . . . provide[s] guidelines to address the following prohibited and/or illegal sexually abusive behavior involving . . . [s]taff perpetrator against inmate victim." Program Statement 5324.12 at 1. L. C.'s Complaint points to numerous portions of Program Statement 5324.12 and relevant portions of Program Statement 3420.11,[9] which are incorporated into Program Statement 5324.12, § 115.61(a). *See* R. 1 (Compl. ¶¶ 12–22) (Page ID #3–6). Again, both before the district court and at our oral argument, the United States agreed that Program Statement 5324.12 imposes a number of non-discretionary mandates on BOP officials. R. 30 (Gov't's Reply Br. at 10 & nn.3–4, 11–12 & n.5) (Page ID #296–98) (conceding that Program Statement 5324.12, § 115.61(a), § 115.62, § 115.71 imposed mandatory duties on BOP officials and address conduct outside of the discretionary-function exception); Oral Arg. at 24:01–25:17.

We look first to the reporting requirements. Program Statement 5324.12, § 115.61(a) quotes 28 C.F.R. § 115.61's requirement that the BOP

---

[8]Program Statement 5324.12 "follows the organization of the relevant portions of 28 CFR Part 115 (Prison Rape Elimination Act National Standards): §§ 115.5, 115.6, Subpart A, and Subpart E." Program Statement 5324.12 at 5. In essence, it quotes (in bolded blue) the PREA implementing regulations promulgated in 28 C.F.R. §§ 115.5, 115.3, and then provides additional policies and guidelines below the regulations' text. *Id.*

[9]*See* U.S. Dep't of Justice, Fed. Bureau of Prisons Program Statement, Standard of Employee Conduct 3420.11, https://perma.cc/7BS8-6JZ5 [hereinafter Program Statement 3420.11].

shall require all staff to report immediately and according to [BOP] policy any knowledge, suspicion, or information regarding an incident of sexual abuse or sexual harassment that occurred in a facility, whether or not it is part of the [BOP]; retaliation against inmates or staff who reported such an incident; and any staff neglect or violation of responsibilities that may have contributed to an incident or retaliation.

To effectuate this regulatory mandate, § 115.61 *requires* that "[a]ll staff *must* report information concerning incidents or possible incidents of sexual abuse or sexual harassment to the Operations Lieutenant, or, where appropriate, in accordance with the Program Statement [3420.11,] Standards of Employee Conduct." *Id.* § 115.61(a) (emphasis added). Program Statement 3420.11 explicitly prohibits BOP "employee[s from] . . . engag[ing] in, or allow[ing] another person to engage in, sexual behavior with an inmate" and explains that "[t]here is never any such thing as *consensual* sex between staff and inmates." Program Statement 3420.11 at 7. It goes on to define "[*s*]*exual contact*," and identifies the disciplinary consequences of violating this directive. *Id.* at 7, *see also id.* at 6, 29, 34. Program Statement 3420.11 mandates that BOP

[e]mployees must . . . [a]s soon as practicable (but no later than 24 hours) report to their CEO (or other appropriate authority such as the Office of Internal Affairs or the Office of the Inspector General) any violation, appearance of a violation, or attempted violation of these Standards or of any law, rule, or regulation.

*Id.* at 5–6. Program Statement 3420.11 further requires that "[a]ll allegations of sexual abuse will be thoroughly investigated and, when appropriate, referred to authorities for prosecution." *Id.* at 7.

Program Statement 5324.12, § 115.71 addresses the investigation that must follow. The regulations and Program Statement require a "prompt[], thorough[], and objective[]" investigation into all "allegations of sexual abuse and sexual harassment." Program Statement 5324.12, § 115.71(a); 28 C.F.R. § 115.71(a). The Program Statement also provides a specific reporting chain to be used when "a staff member is alleged to have perpetrated sexually abusive behavior against an inmate" mandating that "the Warden [be] notified immediately," who in turn "notifies the Regional Director and the Office of Internal Affairs (OIA), who in turn notify the Office of the Inspector General (OIG), and, when appropriate, the Federal Bureau of Investigation (FBI)." Program Statement 5324.12, § 115.71(a)(2). Additionally, the BOP's

investigation "[s]hall be documented in written reports that include a description of the physical and testimonial evidence, the reasoning behind credibility assessments, and investigative facts and findings." Program Statement 5324.12, § 115.71(f)(2); 28 C.F.R. § 115.71(f)(2). The investigation must also "include an effort to determine whether staff actions or failures to act contributed to the abuse." Program Statement 5324.12, § 115.71(f)(1); 28 C.F.R. § 115.71(f)(1).

Ultimately, Program Statement 5324.12, § 115.61(a) and its cross references to the reporting and investigation requirements in Program Statement 3420.11 impose a *mandatory* requirement that the first BOP official with "information concerning incidents or possible incidents of sexual abuse or sexual harassment," Program Statement 5324.12, § 115.61(a), report such information "[a]s soon as practicable (but no later than 24 hours)," Program Statement 3420.11 at 5–6, and immediately investigate the information, Program Statement 5324.12, §§ 115.61(a), 115.71. These are "mandatory regulation[s and] polic[ies] that allow[] no judgment or choice." *Kohl*, 699 F.3d at 940 (quoting *Rosebush*, 119 F.3d at 441); *cf. Milligan*, 670 F.3d at 694.

### 2. Prong Two: Whether the BOP's Failure Timely to Report and Investigate Sexual Misconduct by a BOP Official Is Susceptible to Policy Analysis

Even if, however, timely reporting and investigating information regarding sexual harassment or assault in a BOP facility were discretionary, a failure of BOP staff to do so is *not* a government action susceptible to policy considerations. There are, of course, no legitimate reasons "grounded in social, economic, and political policy" for failing timely to report and investigate the sexual assault of a person in BOP custody. *Gaubert*, 499 U.S. at 323 (quoting *Varig Airlines*, 467 U.S. at 814); *see also Rosebush*, 119 F.3d at 444. Rather, the type of considerations that would impact a BOP official's decision timely to report and investigate information of sexual assault would be personal, *e.g.*, a desire to protect one's coworker, fear of retaliation, or unwillingness to exert the effort to file a report.

Contrary to the district court's conclusion (and the United States's contention), L. C. did *not* need to prove the existence of a "specific and immediate threat" to demonstrate that the BOP's conduct was not susceptible to policy analysis. *L. C.*, 2022 WL 1179400, at *8. The United States frames *Montez ex rel. Est. of Hearlson v. United States*, 359 F.3d 392 (6th Cir.

2004), as holding that, under the discretionary-function exception's second prong, "unless a 'specific and immediate threat' exists of which prison officials were aware, the method employed for keeping inmates safe satisfies the second DFE factor and there is no subject matter jurisdiction over the claim." R. 26 (USA's Mot. to Dismiss at 12) (Page ID #170) (quoting *Montez*, 359 F.3d at 398). This is incorrect.

*Montez* merely observed, without citing to any authorities, that "[a]s a *general principle*, a complaint that alleges the existence of a specific and immediate threat against an inmate is *more likely* to survive a motion to dismiss than a complaint that . . . alleges a nonspecific threat" because "decisions by prison officials to ignore specific and immediate threats against inmates are less likely to be the type of decision that can be said to be grounded in the underlying policy of the BOP, which requires prison officials to provide for the safekeeping and protection of inmates." *Montez*, 359 F.3d at 398 (emphasis added). Our words in *Montez*—an observation of a "general principle" and speculation about what types of allegations would be "more likely to survive a motion to dismiss"—do not support this absolutist interpretation. *See id.* We have never endorsed the United States's view of *Montez* or independently held that an incarcerated individual must plead the existence of a specific and immediate threat to demonstrate that failing to keep an inmate safe was not based in policy considerations. In some instances, perhaps, the absence of a specific and immediate threat against an incarcerated individual may demonstrate that efforts to keep them safe involved policy considerations. In other instances, it may not. A more tailored focus is required.

Aside from this incorrect reading, *Montez*'s holding—that conduct undertaken to carry out 18 U.S.C. § 4042(a)'s general goal of keeping inmates safe involves policy considerations—cannot be universally applied to every case involving harm to incarcerated individuals. *See* 359 F.3d at 397–98. *Montez*'s holding relied on different policy considerations. *Montez* addressed a claim that the BOP failed to protect adequately an incarcerated decedent from attacks by other incarcerated people. *Id.* at 394. In holding that decisions regarding keeping the incarcerated decedent safe from other incarcerated people were grounded in policy and "of the kind that the discretionary function exception was designed to shield," *id.* at 397, we looked to cases that specifically addressed the BOP's alleged negligent failure to prevent

violence perpetrated by one incarcerated person against another. *Id.* at 397–98. First, we examined *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997), and its conclusion "that the BOP's [decision] not to take disciplinary action against [the inmate who later attacked the plaintiff] was based on grounds other than considerations of public policy." *Montez*, 359 F.3d at 397 (alterations in original) (quoting *Calderon*, 123 F.3d at 950). *Calderon* explained that protecting incarcerated individuals from each other involved "balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison[, which] involves considerations based upon public policy." 123 F.3d at 951. We also analogized to and relied on *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998). *Montez*, 359 F.3d at 397–98. *Dykstra*'s explanation for its similar conclusion that keeping incarcerated people safe from one another involved policy considerations likewise contemplated the same logistical and policy concerns of inmate housing and supervision. 140 F.3d at 796. It explained that:

> Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors. These factors upon which prison officials base such decisions are inherently grounded in social, political, and economic policy. We have no difficulty in concluding that the discretionary function exception applies to the correctional officer's decision not to place Dykstra in protective custody or to take other protective action.

*Id.* The policy considerations identified in *Montez*, *Calderon*, *and Dykstra* do not apply outside of the context of keeping incarcerated people safe from one another. For instance, the need to evaluate security levels and classifications and balance incarcerated people's "security with the[ir] rights . . . to circulate and socialize within the prison," *Calderon*, 123 F.3d at 951; *see also Dykstra*, 140 F.3d at 796, and to keep incarcerated people safe from one another, is not of concern when deciding whether to enforce the BOP's zero-tolerance policy for sexual assault and the requirement timely to report and investigate such information.

Because BOP policy requires that its staff timely report and investigate any information pertaining to sexual assault or harassment by a BOP official, and, in any event, the decision to report and investigate is not susceptible to policy analysis, we hold that a properly alleged claim that the BOP acted negligently by failing timely to report and investigate information regarding

sexual assault by a BOP official—as mandated by Program Statement 5324.12, §§ 115.61, 115.71—falls outside of the discretionary-function exception.

### III. WHETHER L. C.'S COMPLAINT ADEQUATELY STATES A CLAIM UPON WHICH RELIEF CAN BE GRANTED

We address now the United States's position that L. C.'s claim fails under Rule 12(b)(6). We—yet again—face forfeiture. The United States did not argue in its brief before this court that the district court's Rule 12(b)(6) ruling should be affirmed, therefore forfeiting the argument. *Island Creek Coal*, 910 F.3d at 256. Here too, L. C. forfeited the forfeiture by failing to raise it in her reply brief. *Shultz*, 733 F.3d at 619. We therefore proceed to the merits.

"We review de novo the district court's grant of a motion to dismiss" brought under Rule 12(b)(6). *Daunt v. Benson*, 999 F.3d 299, 307 (6th Cir. 2021) (citation omitted). "[W]e must determine whether the complaint 'fail[s] to state a claim upon which relief can be granted,' in which case dismissal is warranted." *Id.* at 307–08 (citing Fed. R. Civ. P. 12(b)(6)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Our review "construe[s] the complaint in the light most favorable to the Plaintiff[]," *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (quoting *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005)), and "[w]e accept all of the complaint's factual allegations as true, but 'need not accept as true legal conclusions or unwarranted factual inferences.'" *Michigan Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002) (citation omitted) (quoting *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

Tort liability under the FTCA must be "determined in accordance with the law of the state where the event giving rise to liability occurred." *Milligan*, 670 F.3d at 692 (quoting *Young v. United States*, 71 F.3d 1238, 1242 (6th Cir. 1995)). In Kentucky, a negligence claim "requires proof that (1) the defendant owed the plaintiff a duty of care, (2) the defendant breached the standard by which his or her duty is measured, and (3) consequent injury." *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003). "Consequent injury" involves "actual injury or harm to the plaintiff *and* legal causation between the defendant's breach and the plaintiff's

injury." *Id.* at 88–89. As the United States acknowledged, the BOP has a duty timely to report and investigate information regarding sexual assault. R. 30 (Gov't's Reply Br. at 11) (Page ID #297).

The breach inquiry turns on whether L. C. has plausibly alleged that BOP officials failed timely to report or investigate information that Lee may have been attacking women incarcerated at FMC before November 22, 2019. L. C. has failed to do so. L. C. has not sufficiently alleged that a BOP official had any information about Lee's conduct and failed to act on it before November 22, 2019. L. C. points to her allegation that BOP counselor Ms. Chaney told L. C. that Lee had been reported "a long time ago." R. 1 (Compl. ¶ 65) (Page ID #11). L. C.'s Complaint provides no context for when Chaney made the statement, which limits our ability to draw inferences that Chaney herself knew of Lee's attacks before November 22, 2019, or that Chaney later came to learn that others knew of his attacks before then. Similarly, Dr. Shuster's statement that "she was worried about L. C.'s recovery because of 'what happened with a clinician[,]'" and L. C.'s allegation that she "had not told Dr. Shuster that she had been sexually assaulted by one of her recovery clinicians" indicates that this conversation occurred after the assaults. *Id.* ¶ 66 (Page ID #11); *see also id.* ¶¶ 67–68 (Page ID #11). L. C.'s allegation that a medical department staffer told her on February 18, 2020 that all of Lee's victims had contracted herpes does not permit the inference that staff treated multiple other victims before November 22, 2019, and knew then that each person they were treating had contracted herpes because Lee had attacked them. *Id.* ¶¶ 44, 60 (Page ID #9–10). Looking at these allegations, there is of course a *possibility* that some BOP officials knew of Lee's assaults before November 22, 2019, and failed to act on that information. But, though "[t]he plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. We further note that nothing in the exhibits attached to the United States's motion to dismiss, such as its investigatory report, enables us draw inferences that its staff knew of Lee's assaults before November 22, 2019. With so many holes in the timeline in L. C.'s allegations, we cannot plausibly draw the necessary inferences in a manner that satisfies the pleading standard. *See id.* Because L. C.'s Complaint fails to state a claim upon which relief can be granted, the district court properly dismissed L. C.'s negligence claim.

## IV.  CONCLUSION

The BOP is bound by mandatory directives timely to report and investigate information that a person incarcerated within their custody is the victim of sexual harassment or sexual assault by a BOP official.  Decisions timely to report and investigate such information are not susceptible to policy considerations.  For both reasons, claims that the BOP failed to do so fall outside the discretionary-function exception.  Though L. C.'s Complaint cited these mandatory directives, it lacked sufficient factual allegations to state a claim upon which relief can be granted.  Accordingly, we **AFFIRM** the district court's judgment.